NEARHOUSE, APPELLANT, *v.*
VOLKSWAGEN OF AMERICA, INC.
ET AL., APPELLEES.

(No. 52533—Decided December 15, 1987.)

*Ernest F. Zore,* for appellant.

*Douglas H. Glenn, Weston, Hurd, Fallon, Paisley & Howley* and *Robert D. Kehoe,* for appellees.

SCHWARTZ, J. On April 19, 1984, plaintiff-appellant, Kathleen Near-house, purchased a Volkswagen Quantum automobile from the defendant-appellee, Westside Volkswagen, Inc. The appellant also bought a one-year service contract for the automobile.

In May 1984, the automobile was taken back to the dealership for replacement of the front interior carpeting, the repair of the cruise control, and the repair of the front window molding.

In June 1984, the appellant took the automobile back to the dealership to have the horn repaired.

In July 1984, the appellant took the car back to the dealership to have repairs made on the protective strip on the bumper, and to have further repairs made on the window moldings.

In September 1984, the automobile was taken back to the dealership for the repair of the power sunroof. During this month the dealership also replaced the car's right interior door panel because of a flaw in the fabric. In addition, the left front window molding was replaced.

In November 1984, the dealership repainted the entire automobile due to a defect in its paint.

In January 1985, the dealership repaired the car's power antenna motor, and the left rear window molding.

In February 1985, the dealership replaced the car's passenger door molding.

In April 1985, the car was returned to the dealership two times for additional touch-up painting. The appellant's one-year service contract also expired that month.

On July 15, 1985, the appellant brought suit in the Court of Common Pleas of Cuyahoga County against the defendants-appellees, Volkswagen of America, Inc., Westside Volkswagen of America, Inc. and Westside Volkswagen, Inc. In the first count of her complaint, the appellant alleged that the appellees breached the implied warranties of merchantability and fitness for a particular purpose imposed by R.C. 1302.27 and 1302.28. As part of her claim for damages, the appellant prayed that she be awarded incidental and consequential damages pursuant to R.C. 1302.88 and 1302.89.

On July 21, 1986, the case went to trial. After the appellant presented her case, the court directed a verdict for the appellees. The appellant now appeals the judgment of the trial court, and assigns four errors.

Appellant's first assignment of error is:

"I. The trial court committed error by granting appellees' motion for directed verdict when there existed a genuine issue of fact as to whether the express, limited warranty failed its essential purpose and as to the degree and extent of the impairment of usefulness of the vehicle."

In *Goddard* v. *General Motors Corp.* (1979), 60 Ohio St. 2d 41, 14 O.O. 3d 203, 396 N.E. 2d 761, the Ohio Supreme Court held in the syllabus:

"Where a new car express warranty limits a buyer's remedy to repair and replacement of defective parts, but the new car is so riddled with defects that the limited remedy of repair and replacement fails its essential purpose, the buyer may institute an action to recover damages for breach of warranty under R.C. 1302.88(B) and, in a proper case, incidental and consequential

damages under R.C. 1302.88(C) and 1302.89.''

In the same opinion, the court discussed when a limited remedy fails of its essential purpose:

"Although in most cases a limited remedy may be fair and reasonable, and satisfy the reasonable expectations of a new car purchaser, other courts and some commentators have generally recognized that when a seller is unable to fulfill its warranted obligation to effectively repair or replace defects in goods which are the subject matter of the sale, such as in the instant cause, the buyer is deprived of the benefits of the limited remedy and it therefore fails its essential purpose.'' *Id.* at 45, 14 O.O. 3d at 205-206, 396 N.E. 2d at 764.

During the limited warranty period, the appellant's automobile was continually returned to the appellee Westside Volkswagen, Inc. for repairs. At trial, the appellant testified that her car still had defects outstanding after the warranty period had expired. Specifically, the appellant testified that three window moldings needed to be replaced, the power antenna had failed a second time, the power sunroof had failed a second time, the paint job needed repair, a power window had failed, the chrome on a rearview mirror had partially flaked off, and a front bumper clip needed to be replaced.

Civ. R. 50(A)(4) provides:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.''

Based on the above-mentioned testimony, a reasonable mind could not come only to the conclusion that the automobile's limited warranty had not failed of its essential purpose. Hence, the trial court erred in directing a verdict for the appellees as to the appellant's cause of action for the breach of implied warranties. Appellant's first assignment of error is well-taken.

Appellant's second assignment of error is:

"II.  The trial court committed error by granting appellees' motion to exclude the introduction of evidence after the tolling of the one-year duration of the express warranty.''

During trial, the appellees moved to preclude the appellant's evidence in regard to defects in the appellant's automobile arising after the expiration of the limited warranty. The court granted the appellees' motion, and the appellant argues that the court erred in doing so.

Several of the appellant's causes of action were based on the appellees' alleged breach of implied warranties. If the appellant could have proved that the express limited warranty had failed of its essential purpose, then she could have possibly succeeded in her implied warranty claims. The evidence excluded by the trial court was relevant to the appellant's implied warranty claims. Accordingly, it should not have been excluded by the trial court. Appellant's second assignment of error is well-taken.

Appellant's third assignment of error is:

"III.  The trial court committed error by granting appellees' motion to strike and to exclude evidence of the incidental and consequential damages.''

During the appellees' cross-examination of the appellant, the appellees moved to dismiss the appellant's claims for incidental and consequential damages. The court granted the ap-

pellees' motion. The appellant seems to argue that the court erred in dismissing these claims.

R.C. 1302.88 lists what a buyer who retains defective goods may recover as damages because of a seller's breach. In pertinent part, this statute provides:

"(C) In a proper case any incidental and consequential damages under section 1302.89 of the Revised Code may also be recovered."

Further, *Goddard, supra,* stands for the proposition that if an express warranty fails of its essential purpose, a buyer may seek in a proper case incidental and consequential damages.

R.C. 1302.89 defines "incidental" and "consequential damages." In regard to "incidental damages," it provides:

"(A) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation, and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses, or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach."

Under R.C. 1302.88 and 1302.89, a buyer who has retained possession of defective goods can recover damages for any incidental damages that he can prove as a result of a seller's breach. In the instant case, if the appellant could have succeeded on her implied warranty claims, then under the above statutes she would have been entitled to recover any incidental damages she suffered. Accordingly, the appellant's incidental damage claim should not have been dismissed.

In regard to "consequential damages," R.C. 1302.89 provides:

"(B) Consequential damages resulting from the seller's breach include:

"(1) Any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise[.]"

Under this section, an aggrieved buyer may recover consequential damages as a result of a seller's breach if he can show both that the seller had reason to know of his general or particular requirements, and that the buyer's damages could not have been reasonably prevented by cover or otherwise. Since the appellant's claim in this regard was dismissed before she rested her case, she was not afforded an adequate opportunity to prove that she was entitled to these damages under the statute. Accordingly, the trial court erred in dismissing the appellant's claim for consequential damages.

Because of the above, the appellant's third assignment of error is well-taken.

Appellant's fourth assignment of error is:

"IV. The trial court committed error by granting appellees' motion to preclude appellant from testifying as to the fair market value of her vehicle."

In *Combs* v. *Cincinnati Gas & Elec. Co.* (1984), 16 Ohio App. 3d 98, 99, 16 OBR 104, 105, 474 N.E. 2d 668, 669-670, the Court of Appeals for Hamilton County stated:

"The well-settled rule regarding the ability of the owner of personal property to testify to its value for purposes of establishing damages was recited most recently by the Ohio Supreme Court in *Bishop* v. *East Ohio Gas Co.* (1944), 143 Ohio St. 541 [28 O.O. 470]. In *Bishop,* the court stated at 546, ' "[i]t is established in Ohio that the owner of personal property, because of such ownership, has a sufficient knowledge of its value to be qualified to give an opinion thereon

which will be some evidence, of the actual value, though not conclusive. * * *" ' See, also, *Kohnle* v. *Carey* (1946), 80 Ohio App. 23 [35 O.O. 413].

"In two reported cases since *Bishop,* this court has held that the owner of personal property, although not an expert, is a competent witness as to the value of his own property. See *Layton* v. *Ferguson Moving & Storage Co.* (1959), 109 Ohio App. 541 [12 O.O. 2d 157]; *Employers' Fire Ins. Co.* v. *United Parcel Service* (1950), 89 Ohio App. 447 [45 O.O. 475]. See, also, *Butram* v. *Blair* (1958), 106 Ohio App. 57 [6 O.O. 2d 312]; *Mills* v. *Banks* (1954), 97 Ohio App. 557 [56 O.O. 486]; *Groves* v. *Gray* (1942), 74 Ohio App. 384 [29 O.O. 580]."

Because of the above precedent, the court should have allowed the appellant to testify as to the fair market value of her automobile. Accordingly, the court erred in not permitting this testimony, and appellant's fourth assignment of error is well-taken.

*Judgment reversed*
*and cause remanded.*

DYKE, P.J., concurs.

M. RESNICK, J., dissents.

MELVIN L. RESNICK, J., of the Court of Common Pleas of Lucas County, and LOUIS SCHWARTZ, J., of the Court of Common Pleas of Clermont County, sitting by assignment.

M. RESNICK, J., dissenting. I must respectfully dissent. The pertinent issue in this case is whether the limited express warranty failed in its essential purpose. As stated in *Goddard* v. *General Motors Corp.* (1979), 60 Ohio St. 2d 41, 45, 14 O.O. 3d 203, 205-206, 396 N.E. 2d 761, 764:

"Although in most cases a limited remedy may be fair and reasonable, and satisfy the reasonable expectations of a new car purchaser, other courts and some commentators have generally recognized that when a seller is *unable to fulfill its warranted obligation* to effectively repair or replace defects in goods which are the subject matter of the sale, such as in the instant cause, the buyer is deprived of the benefits of the limited remedy and it therefore fails its essential purpose." (Emphasis added.)

In the case *sub judice,* the plaintiff-appellant has failed to make a *prima facie* showing that the defendants-appelles were unable or unwilling to fulfill their warranty obligations. The record demonstrates that the requested repairs were performed. The mere fact that certain repairs remained unperformed cannot in any way lead to the conclusion that they could not or would not be done by appellees.

Appellant correctly asserts, "Ohio case law indicates that where a seller is *unable* to cure a defect in the buyer's automobile the express warranty and its disclaimer * * * failed their essential purpose and therefore are void within the meaning of Section 1302.15 of the Ohio Revised Code," citing *Eckstein* v. *Cummins* (1974), 41 Ohio App. 2d 1, 70 O.O. 2d 10, 321 N.E. 2d 897. The record illustrates, however, that appellant did not give appellees the opportunity to commence or complete the alleged repairs that remained. Although the transcript details each of the items complained of by the appellant and what was done to her satisfaction, the most compelling statement by the appellant reads as follows:

"Q. Miss Nearhouse, before we broke for lunch, I believe I was completing my questions about the repairs that had been made to the vehicle.

"Let me start off the afternoon session by asking you, with the exception of the items that your counsel put

on the board, the repairs that were made to your satisfaction and did not have to be made a second time, is that correct?

"A. With the exception of the antenna, the paint, the moldings and the sunroof motor, yes, that is correct.

"Q. And on each of those occasions you believed that you had gotten what you bargained for in terms of a repair or replacement of a specific part, isn't that correct?

"A. Of certain parts, yes. My car in general, no.

"* * *

"Q. As it relates to those items that you added to your answer, Ms. Nearhouse, those being the antenna, sunroof, the paint and the moldings, am I correct that you have not taken the car back to Westside Volkswagen or otherwise given Volkswagen an opportunity to cure these defects; is that correct?

"A. That is correct."

Can it thus be said that the express limited warranty failed in its essential purpose? The answer is an obvious no. Appellant, by her failure to give appellees further opportunity to cure the alleged defects, can not now maintain that appellees were unable to fulfill their warranty obligations. In so finding, it is unnecessary to proceed to a theory of breach of implied warranty of merchantability inasmuch as this remedy is precluded. *Goddard, supra.* It is only when the express limited warranty fails in its essential purpose that a buyer may resort to other remedies. R.C. 1302.93.

It is apparent from the record that this case was not one of "revocation of acceptance." Had it been, perhaps the appellant's statement that, as to her car in general, she did not feel she had gotten what she bargained for would have had some legal effect. However, the mere failure to meet the "buyer's expectations" (R.C. 1302.66[A]) does not trigger the remedy of revocation of acceptance when the buyer has not sought the same. Moreover, R.C. 1302.65 provides in part:

"(B) Acceptance of goods by the buyer *precludes* rejection of the goods accepted and if made with knowledge of non-conformity *cannot be revoked because of it unless* the acceptance was on the reasonable assumption that the non-conformity would be seasonably cured * * *." (Emphasis added.)

Although the majority has cited the test to determine when a limited warranty fails in its essential purpose, it has given no effect to the stated authority that the seller *must be unable or unwilling* to fulfill its warranted obligation. If the majority instead relies solely on the syllabus of *Goddard, supra,* wherein the words "but the new car *is so riddled with defects* that the limited remedy of repair and replacement fails its essential purpose * * *" (emphasis added), then a reading of the cases relied upon for such holding is necessary. In each of those cases, it was reiterated that the seller was either *unable* or *unwilling* to perform the repairs. *Clark* v. *International Harvester Co.* (1978), 99 Idaho 326, 581 P. 2d 784; *Riley* v. *Ford Motor Co.* (C.A. 5, 1971), 442 F. 2d 670; *Murray* v. *Holiday Rambler, Inc.* (1978), 83 Wis. 2d 406, 265 N.W. 2d 513.

In *McCullough* v. *Bill Swad Chrysler-Plymouth, Inc.* (1983), 5 Ohio St. 3d 181, 186, 5 OBR 398, 403, 449 N.E. 2d 1289, 1294, relied upon by appellant, even though that case dealt with revocation of acceptance, it is stated that:

"It is beyond reasonable dispute that the warranties furnished appellee failed of their essential purpose. The automobile was severely flawed, and appellant *proved incapable* of curing its defects." (Emphasis added.)

Appellant also urges this court to

48

adopt a "downtime" theory to support her claim that the limited express warranty failed in its essential purpose. Although this may be the law of other states, it is not yet the law in Ohio and this court cannot legislate. The legislature has enacted R.C. 1345.73, effective October 22, 1987. This section, however, creates a presumption only in regard to downtime of thirty days or more. R.C. 1345.73 does not apply to the instant cause inasmuch as it was not in effect at the time of the trial herein.

It is this writer's opinion, therefore, that unless there has been a *prima facie* showing that the appellees were either unwilling or unable to remedy the alleged defects within a reasonable time after the complaints were made by appellant, a breach of limited express warranty has not been demonstrated and the warranty has, therefore, not failed in its essential purpose so as to permit recovery on implied warranty or revocation of acceptance and the damages consequent thereto.

As to the final assignment of error, in view of the above reasoning, I find this error harmless and I would, therefore, affirm the trial court's decision on the motion for directed verdict.