2001 SD 3

**Frank ALVINE, Plaintiff and Appellee,**

v.

**MERCEDES–BENZ OF NORTH AMERICA, Defendant and Appellant.**

**Nos. 21187, 21193.**

Supreme Court of South Dakota.

Considered on Briefs April 26, 2000.

Decided Jan. 3, 2001.

Steven W. Sanford and Karen A. Hilmoe of Cadwell, Sanford, Deibert & Garry, Sioux Falls, SD, Attorneys for plaintiff and appellee.

Lon J. Kouri and Deborah A. Birgen of May, Johnson, Doyle & Becker, Sioux Falls, SD, Attorneys for defendant and appellant.

MARTIN, Circuit Judge

[¶ 1.] Mercedes–Benz of North America, Inc. (Mercedes–Benz) appeals from a judgment determining that it breached an express warranty for a used Mercedes automobile purchased by Frank Alvine. We affirm all issues but remand issue 4 in part.

### FACTS

[¶ 2.] In 1992, Mercedes–Benz introduced a new model automobile, the 500

SEL. Everything on this model was new except the engine. Mercedes–Benz offered a limited written warranty with this vehicle, which provided in part:

> Mercedes–Benz of North America, Inc. (MBNA) warrants to the original and *each subsequent owner* of a new Mercedes–Benz passenger car that any authorized Mercedes–Benz Dealer will make any repairs or replacements necessary, to correct defects in material or workmanship.

> \* \* \*

> Our intention is to repair under the warranty, without charge to you, anything that goes wrong with your car during the warranty period which is our fault. All we ask that you properly maintain and care for the car and that you have warranty repairs or adjustments performed by an authorized Mercedes–Benz dealer.

(emphasis added).

[¶ 3.] The warranty period was forty-eight months or 50,000 miles, whichever came first. The limited warranty provided in part, "[t]he warranty period starts on the date the car is delivered to the first retail purchaser or put in service as a dealer demonstrator or MBNA Company Car." The first purchaser, Jerry Berger, purchased the vehicle on February 18, 1992 and kept it until October 27, 1993. Vaughn Woodward and his wife were the second purchasers, owning the car from February 2, 1994 until the summer of 1995. Alvine was the third owner, acquiring the vehicle on September 23, 1995 for $57,000. At that time, the vehicle had just under 44,661 miles and there were approximately five months left on the warranty. He purchased the vehicle from Superior Lexus Motor Company in Kansas City, Missouri and the dealership had it driven to Sioux Falls. Alvine was unaware of any problems with the vehicle.

[¶ 4.] On January 15, 1996, while the warranty was still in effect, the vehicle simply stopped running and would not re-start. It had to be pushed off the street and towed to the local Mercedes dealer, Vern Eide Motorcars, Inc. (Vern Eide). Alvine had similar experiences eight more times in less than 3,000 miles. These incidents occurred after the term of the express warranty expired in February 1996. The vehicle was towed to Vern Eide each time and repair attempts were made, but were unsuccessful. Alvine registered complaints to Mercedes Benz, but its involvement did not cure the problem. Finally, in the summer of 1997, Alvine had enough and tried to return the car by leaving it at Vern Eide, but it refused the vehicle and delivered it back to Alvine. Mercedes–Benz believed its obligation under its warranty expired when the warranty term expired.

[¶ 5.] Alvine commenced a lawsuit against Mercedes–Benz for breach of express warranty. At trial, the jury awarded Alvine damages in the amount of $70,440. This figure represented the $57,000 purchase price of the vehicle, plus $1,440 for storage and $12,000 for the lease of a replacement vehicle. In addition, the trial court awarded attorney fees in the amount of $47,328.50. Mercedes–Benz appealed, raising five issues. By notice of review, Alvine appealed the denial of his motion for new trial based on the failure to award prejudgment interest.

[¶ 6.] **1. Whether the trial court erred in denying Mercedes–Benz' motion for directed verdict and in allowing the jury to decide if the vehicle had been repaired per the express warranty.**

■ [¶ 7.] The jury heard testimony from Alvine regarding the problems with the vehicle stalling and also heard extensive testimony from Mercedes–Benz about this model, including the reasons for the stalling problem, the problems of this particular vehicle, and the repair attempts made thereto. The jury had the opportunity to consider all this testimony and observe the witnesses.

[¶ 8.] Reasonable minds could differ whether the problems experienced by Alvine after the warranty expired were the same as the problems experienced within the warranty period. This issue was properly presented to the jury. *McDonough v. Kahle,* 1999 SD 14, ¶ 8, 588 N.W.2d 600, 602. Put another way, whether the problems incurred by Alvine after the warranty term expired were latent in nature or caused by a failure of the dealer to appropriately fix the problems that occurred during the warranty period was a jury question. Defects occurring before the expiration of the warranty period should be repaired in accordance with the warranty, and, if not, then a warrantor's liability for breach of warranty continues even after the expiration of the term of express warranty. *Johnson v. John Deere Co.,* 306 N.W.2d 231, 235 (S.D.1981); *Durant v. Palmetto Chevrolet Co.,* 241 S.C. 508, 129 S.E.2d 323, 326 (S.C.1963); *Nearhouse v. Volkswagen of America, Inc.,* 42 Ohio App.3d 42, 536 N.E.2d 46, 48 (1987). The trial court did not err in denying the motion for directed verdict.

[¶ 9.] **2. Whether the trial court abused its discretion in allowing testimony of a prior lawsuit and complaints from previous lawsuit and complaints from previous owners regarding the vehicle in determining damages.**

[¶ 10.] The trial court allowed the jury to hear testimony from the two previous owners regarding their problems with this vehicle, as well as evidence from Mercedes–Benz about the problems with this car. This vehicle had 73 warranty claims between February 18, 1992 and July 6, 1995 and went to the repair shop 35 times before Alvine purchased it. A problem experienced by all of the owners was that the vehicle would, without warning, simply quit and not restart. The first two owners also experienced problems with this vehicle involving windows not working, computer replacement, replacement of contact rings and brush set in motor, seals on windows leaking, vehicle hesitating on acceleration, replacement of mirror motors, transmission shifting jerkily, doors out of alignment, and the trunk, air conditioner, and phone not working. Both owners were allowed to testify that a national class action lawsuit had been brought involving this make and model for tire and vibration problems.

[¶ 11.] Admissibility of evidence is within the sound discretion of the trial court. The trial court has broad discretion in balancing the probative value of evidence against its prejudicial effect and its ruling will not be disturbed on appeal absent abuse of discretion. *Schaffer v. Edward D. Jones & Co.,* 521 N.W.2d 921, 925 (S.D.1994); *Time Out, Inc., v. Karras,* 469 N.W.2d 380, 384 (S.D.1991). An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence. *Harter v. Plains Ins. Co., Inc.,* 1998 SD 59, ¶ 13, 579 N.W.2d 625, 629.

[¶ 12.] The decision by the trial court to allow such testimony has not been shown to be an abuse of discretion. This evidence may have been probative to the jury in determining the amount of damages for breach of warranty. In addition, Mercedes Benz cannot be heard to complain since it made no timely objection nor motion to strike this evidence. SDCL 19–9–3(1); *Andreson v. Black Hills Power & Light,* 1997 SD 12, ¶ 19, 559 N.W.2d 886, 890; *Bakker v. Irvine,* 519 N.W.2d 41, 47 (S.D.1994). Mercedes–Benz made a motion in limine regarding this testimony but failed to specifically object during the trial, and is foreclosed from raising this issue on appeal. *State v. Gallipo,* 460 N.W.2d 739, 743 (S.D.1990).

[¶ 13.] **3. Whether the trial court erred in denying Mercedes–Benz' motion for directed verdict regarding consequential damages.**

[¶ 14.] At the conclusion of Alvine's evidence, Mercedes Benz made a

motion for a directed verdict on the issue of consequential damages. However, Mercedes–Benz failed to renew its motion at the close of all the evidence. Thus, it is not reviewable on appeal. *Pearson v. Adams*, 279 N.W.2d 674, 677 (S.D.1979). In addition, Mercedes–Benz made no objection to this evidence nor to the jury instruction on the measure of damages. This instruction provided in part,

> In this case, the measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, *unless special circumstances show proximate damages of a different amount.*

This instruction permitted the jury to determine if special circumstances were present making the usual measure of damages inadequate in this case. Mercedes–Benz cannot now be heard to complain. No error has been shown, on this record, in the trial court's ruling denying the motion for directed verdict on consequential damages.

**[¶ 15.] 4. Whether the trial court erred in denying Mercedes–Benz' motions for remittitur and judgment notwithstanding the verdict.**

■ [¶ 16.] Mercedes–Benz claims that the damages for the vehicle of $57,000, storage costs of $1,440, and replacement rental loss of $12,000 should be remitted. The jury was instructed, with the concurrence of Mercedes–Benz, that "the measure of damages is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."

■ [¶ 17.] The standard regarding a motion for remittitur is that:

> The damages, therefore, must be so excessive as to strike mankind, at first blush, as being, beyond all measure, unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line; for they have no standards by which to ascertain the excess.

*Stormo v. Strong,* 469 N.W.2d 816, 826 (S.D.1991) (quoting *Schuler v. City of Mobridge*, 44 S.D. 488, 493, 184 N.W. 281, 283 (1921)).

[¶ 18.] In this case, the jury heard evidence of the purchase value, the problems suffered by Alvine during his ownership, Alvine's inability to use the vehicle because of the problems, the time the dealer had the vehicle for repairs, the many attempts by the dealer to cure the problem, the depreciation of the vehicle as presented by Mercedes–Benz, Blue Book evidence, Mercedes–Benz' current value of the vehicle and its trade-in value, the problematic history of the vehicle, the value testimony of Alvine, and the ultimate refusal of the dealer or Mercedes–Benz to take back the vehicle. Mercedes–Benz further testified that the Kelly Blue Book provided that: "[s]uggested retail represents a price a dealership might ask for this make and model vehicle. This represents a fully reconditioned vehicle in excellent condition with clean title history." Mercedes–Benz testified to values for a 1992–500 SEL Mercedes–Benz from the Kelly Blue Book rather than the value of the vehicle owned by Alvine. Mercedes–Benz had the opportunity to present evidence of the current value of the vehicle in question, with all its imperfections, but instead chose to testify in generic terms. The owner, Alvine, testified that the vehicle was basically unusable and its value was zero.

[¶ 19.] The jury heard all the testimony and had the opportunity to observe the witnesses. By its verdict, it appears the jury chose to believe Alvine and adopted his value of the vehicle, rejecting Mercedes–Benz' testimony in this regard. The jury also adopted Alvine's testimony re-

garding storage costs and expense of the replacement rental.

[¶ 20.] The decision of the jury, under these facts, was not flagrantly unreasonable or outrageous and therefore the motion for remittitur and the motion for judgment NOV must fail. There is no showing that the trial court abused its discretion in denying these motions.

[¶ 21.] We realize that Alvine earlier attempted to return the vehicle to Mercedes–Benz and it refused the vehicle. However, by virtue of the damages awarded in this case we feel that Alvine should not also be entitled to retain the vehicle. Therefore, we remand to require Alvine to make the vehicle available for return to Mercedes–Benz for 30 days from remittitur at the option of Mercedes–Benz.

[¶ 22.] **5. Whether the trial court abused its discretion in awarding attorney fees to Alvine.**

[¶ 23.] Alvine submitted documentation of time spent by his attorney and the trial court approved the same in the amount of $47,328.50. Mercedes–Benz claims this amount includes time and expense attributable to legal theories upon which plaintiff did not prevail and therefore should not recover.

[¶ 24.] Alvine alleged in his complaint that Mercedes–Benz was in violation of the Magnuson–Moss Warranty Act which entitled Alvine to recover attorney fees and costs in an amount to be determined by the court. The Magnuson–Moss Warranty Act provides:

If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action,

unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate.

15 USC § 2310(d)(2).

[¶ 25.] In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the United States Supreme Court held that even though the jury did not adopt every theory advanced, and plaintiff did not prevail on every motion, he would still be entitled to recover his full attorney fees. The Court stated:

[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Id.*, 461 U.S. at 435, 103 S.Ct. at 1940, 76 L.Ed.2d at 52 (internal citation omitted). Reasonable attorney fees are determined by calculating the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Id.*, 461 U.S. at 433, 103 S.Ct. at 1939, 76 L.Ed.2d at 50.

[¶ 26.] Mercedes–Benz has not shown an abuse of discretion by the trial court in awarding reasonable attorney fees to Alvine.

[¶ 27.] **6. Whether the trial court erred in denying Alvine's motion for a new trial based on the failure to grant prejudgment interest.**

[¶ 28.] Under SDCL 21-1-13.1:

[a]ny person who is entitled to recover damages ... is entitled to recover interest thereon from the day that the loss or

damage occurred.... If there is a question of fact as to when the loss or damage occurred, prejudgment interest shall commence on the date specified in the verdict or decision.... If necessary, special interrogatories shall be submitted to the jury. Prejudgment interest on damages arising from a contract shall be at the contract rate, if so provided in the contract; otherwise, if prejudgment interest is awarded, it shall be the Category B rate specified in § 54–3–16. *The court shall compute and award the interest provided in this section and shall include such interest in the judgment in the same manner as it taxes costs.* (emphasis added).

[¶ 29.] Prejudgment interest is now mandatory, not discretionary. However, in this case, the jury was instructed that the allowance of prejudgment interest was in its discretion. Also, the instruction did not set forth an individual line for each loss incurred (vehicle, storage, and rental replacement) and the respective time of loss (for each). This instruction was given with the concurrence of Alvine and no special interrogatories were submitted to the jury. Alvine will not now be heard to complain.

[¶ 30.] In the future, it is recommended that a jury instruction on prejudgment interest provide that the same is mandatory when damages are recoverable, and request the jury to determine the amount of loss and the date of loss. Special interrogatories may also be submitted. The court will then compute the interest award.

[¶ 31.] We affirm all issues but remand Issue 4 in part.

[¶ 32.] SABERS and KONENKAMP, Justices, concur.

[¶ 33.] GILBERTSON, Justice, concurs in part and dissents in part.

[¶ 34.] AMUNDSON, Justice, concurs in part and dissents in part.

[¶ 35.] MARTIN, Circuit Judge, for MILLER, Chief Justice, disqualified.

GILBERTSON, Justice (concurring in part and dissenting in part).

[¶ 36.] I concur with the majority opinion on Issues One, Two, Three, Four and Six.

[¶ 37.] I join the dissent of Justice Amundson at to Issue Five (attorney's fees).

AMUNDSON, Justice (concurring in part and dissenting in part).

[¶ 38.] I concur in issues 1 and 2.

[¶ 39.] I respectfully dissent as to issues 3, 4 and 5.

## ISSUE 3: INCIDENTAL AND CONSEQUENTIAL DAMAGES

[¶ 40.] The majority holds that the issue of incidental and consequential damages has been waived. It is true, as the majority states, that SDCL 15–6–50(a) requires that a motion for directed verdict be made at the close of all the evidence in order to preserve that issue for appeal. *Pearson v. Adams*, 279 N.W.2d 674 (S.D. 1979). The holding of *Pearson*, however, does not dispose of this case.

[¶ 41.] In *Pearson*, we stated that "[i]nsufficiency may not be reviewed unless it has been timely presented to the trial court by a proper motion for directed verdict, request for findings, or other apt motion, offer, *objection or exception*." 279 N.W.2d at 676 (citations omitted) (emphasis supplied). When a party challenges the sufficiency of the evidence at the close of the plaintiff's case and during settlement of instructions, that party has timely preserved the issue by apt motion or objection. In this case, not only did the defense move for a directed verdict, but also objected to the jury instruction on incidental and consequential damages by arguing that "there is[n't] sufficient evidence to submit to the Court [ ] the issue of the storage or the rental value," thus it

would be improper to have a verdict form that would allow for such damages. Although the trial court disregarded such argument and allowed the plaintiff's version of the verdict form, defense counsel took exception. The objection and exception by defense counsel preserved this issue for appeal. We have stated that "[q]uestions of insufficiency of the evidence [of damages] may be presented on appeal without the necessity of an application for a new trial if the questions by appropriate proceedings have been first presented and decided in the court below." *Schoenrock v. City of Sisseton*, 78 S.D. 419, 103 N.W.2d 649, 653 (1960). Based on the above, this issue is properly before the court.

[¶ 42.] SDCL 57A–2–715 permits the trial court to grant incidental and consequential damages. SDCL 57A–2–715 in part provides:

(1) Incidental damages resulting from the seller's breach include expenses reasonably incurred . . . and any reasonable expense incident to the delay or breach.

(2) Consequential damages resulting from the seller's breach include:

(a) Any loss . . . and

(b) Injury to person or property proximately resulting from any breach of warranty.

Therefore, according to statute, the damages must be an expense actually incurred, and they must be the proximate result of the breach. We have also stated that damages "may be recovered if the evidence shows with reasonable certainty both their occurrence and the extent thereof." *Drier v. Perfection Inc.*, 259 N.W.2d 496, 507 (S.D.1977). Thus, it is paramount for the plaintiff to put forth evidence of actual damages. *Kobbeman v. Oleson*, 1998 SD 20, ¶ 5, 574 N.W.2d 633, 635 (citations omitted). It is the plaintiff's burden to establish that he or she has, in fact, been damaged by the defendant. *Id.*

[¶ 43.] At trial, however, Dr. Alvine produced no evidence that he had actually incurred any expense for storage. No estimates, receipts, or records were produced to show such an expense. This is because he, in fact, had the vehicle stored exclusively at his own residential garage. Thus, the $1440 cost for storage was not actually incurred. On cross-examination Dr. Alvine admitted as much:

Q: You have not procured any such storage have you?

A: That's correct.

This exchange, coupled with the inability to produce any documents establishing such expense, should lead one to the conclusion that Dr. Alvine had incurred no expenses related to storage of the Mercedes. We have often stated that damages must be proven by a reasonable degree of certainty. Damages are not recoverable unless they are "clearly ascertainable in both their nature and origin." *High Plains Genetics Research Inc. v. J K Mill–Iron Ranch*, 535 N.W.2d 839, 844 (S.D. 1995) (citing SDCL 21–2–1). "It is fundamental that damages, which are uncertain, contingent or speculative cannot be made the basis of recovery." *Kunkel v. United Sec. Ins. Co.*, 84 S.D. 116, 168 N.W.2d 723, 733 (1969). Without an expense incurred, one is not entitled to damages. *Kobbeman, supra.*

[¶ 44.] The evidence shows the same for the $12,000 lease award. Again, Dr. Alvine did not incur any expense related to the rental of a car because one was never rented. Dr. Alvine speculated that it would probably cost him around five hundred dollars per month to rent a car similar to that of the Mercedes. Again, no receipts, estimates, or documents of any kind were offered to show that the five hundred-dollar per month figure was more than conjecture and speculation.

[¶ 45.] More importantly, according to Dr. Alvine's testimony, he had five other vehicles from which to choose. He admitted that he owned two pickups, a Jaguar, an Oldsmobile, and a Dodge Durango. In a follow up question on cross-examination, Dr. Alvine was asked:

Q: So with all those vehicles you're not hurting for wheels to get around are you?

A: No. I'm using my pick-up and Oldsmobile, yes.

There was no reason for Dr. Alvine to rent a vehicle because he had an array of vehicles from which to choose. Regardless, Dr. Alvine did not, in fact, rent a car. Because he never rented a car, he cannot exactly show how he was damaged.

[¶ 46.] It is clear that damages must be actually incurred before recovery is allowable. SDCL 57A–2–715(1). Damages are not appropriate unless the plaintiff can show that he or she can show a loss or damages actually incurred. *Kobbeman, supra.* Here, Dr. Alvine has failed to offer such proof. Therefore, an award for incidental and consequential damages was not proper. Courts of law are to dispense justice and fair decisions, and should not allow a litigant to recover an award that amounts to a damage bonus. On the record before us, I do not agree with the trial court's decision to allow incidental and consequential damages. As such, I also dissent to the outcome reached in issue 4 as it relates to remittitur of incidental and consequential damages.

## ISSUE 5: ATTORNEYS' FEES

[¶ 47.] The Magnuson–Moss Warranty Act allows recovery of attorneys' fees in an action brought in state court. *Champion Ford Sales, Inc. v. Levine,* 49 Md.App. 547, 433 A.2d 1218 (1981). Under the Act, attorneys' fees are recoverable by the prevailing party at the discretion of the trial court.* The question raised on appeal, however, is not the initial granting of attorneys' fees, but rather the amount of the attorneys' fees awarded. Mercedes claims that the award of $47,328.50 for attorneys' fees was not reasonable.

[¶ 48.] By affidavit, Dr. Alvine's attorney requested a $5,565 increase in the fee award because of the successful result. The $5,565 figure is the equivalent of a $25 per hour enhancement. A fee enhancement is prohibited under the Magnuson Moss Warranty Act. *See Volkswagen of America, Inc. v. Smith,* 690 So.2d 1328 (Fla.Dist.Ct.App.1997); *Maserati Automobiles Inc. v. Caplan,* 551 So.2d 501 (Fla. Dist.Ct.App.1989). The prevailing attorney should be held to the terms of the fee contract agreed upon with his client. "In no case should the court-awarded fee exceed the fee agreement reached by the attorney and his client." *Maserati, supra,* at 503 (citing *Perez–Borroto v. Brea,* 544 So.2d 1022, 1023 (Fla.1989)). When an attorney and a client agree upon a fixed hourly rate, it would be unjust to allow that attorney a higher rate because of the mere presence of a fee-shifting statute.

[¶ 49.] Nowhere in the Magnuson–Moss Warranty Act does it state that a fee enhancement is required or discretionary. Rather, the Act states that the fees must ·be reasonable. "What we require the trial court to do is exercise its discretion regarding an attorney's fee award in a reasonable manner[.]" *Samuels v. American Motors Sales Corp.,* 969 F.2d 573, 579 (7th Cir.1992). The purpose of the Act is not

---

* 15 USC § 2310(d)(2). The statute provides:

> If a consumer finally prevails ... he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees *based on actual time expended* ) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such award of attorneys' fees would be appropriate. (emphasis supplied).

The majority's reliance on *Hensley* is erroneous for two reasons. First, *Hensley* involved an involuntary commitment proceeding under 42 USC § 1983. Second, under such action, attorneys' fees are awarded under 42 USC § 1988, which does not expressly allow attorneys' fees "based on actual time expended" as expressed in the Magnuson–Moss Warranty Act. *Hensley* clearly does not support an award of attorneys' fees based on the Magnuson–Moss Warranty Act.

to punish the losing party, rather it is to give what is generally considered persons unable to afford legal representation an avenue of cost savings that would not normally be afforded such a person under our American rule for attorneys' fees. With this purpose in mind, it is contrary to the purpose of the Act to dispense punishment by awarding a fee enhancement to the detriment of the defending party. Dr. Alvine's attorney would have been made whole without such a fee enhancement. This Court should not adopt a rule that gives bonuses to those who prevail and, concomitantly, punishes those who defend such claims and are unsuccessful.

[¶ 50.] This Court should strike the award as to the incidental and consequential damages, and the fee enhancement. We should also remand for a determination of reasonable attorneys' fees without the inclusion of the fee enhancement.

[¶ 51.] GILBERTSON, Justice, joins this writing as to issue 5 (attorney's fees).