2003 SD 39

**Shirley M. THOMAS, Plaintiff,**

**v.**

**George W. THOMAS, Defendant,**

**and**

**Gail Thomas, Plaintiff and Appellee,**

**v.**

**Shirley M. Thomas, Defendant and Appellant,**

**and**

**George W. Thomas, Defendant.**

**Nos. 22548, 22566.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 10, 2003.

Decided April 16, 2003.

Benjamin J. Eicher of Wallahan & Eicher, Rapid City, South Dakota, Attorneys for appellant.

SABERS, Justice.

[¶ 1.] This case arises out of a consolidated action which involved the divorce of Shirley Thomas (Shirley) and George Thomas (George), lawsuits arising from the attempted sale of George and Shirley's marital home, and a quiet title action brought by Gail Thomas (Gail) against Shirley and George. Gail is George's daughter from a previous marriage. The only parties remaining at this juncture are Gail and Shirley. Shirley appeals 1) the propriety of the court's hearing on Gail's motion for waste; 2) the award of damages for waste and property taxes; and 3) the court's denial of an offset or credit for improvements. By notice of review, Gail appeals 4) the trial court's partial denial of damages for waste; 5) the denial of prejudgment interest on the property tax award; 6) the trial court's denial of treble damages for waste; and 7) the denial of Rule 11 sanctions against Shirley's counsel. We affirm in part and reverse in part and remand to the trial court for orders in accordance with this decision.

### FACTS

[¶ 2.] Shirley and George were divorced in January, 2000. Among the issues addressed by the court in the divorce action was title to the parties' marital home. In 1996, George and Shirley deeded the property to Gail, with Shirley retaining a life estate. Without joining Gail as a party, the divorce court repudiated the property transfer to Gail, finding that the self-executing provisions of the warranty deed had not taken place. The court ordered that the home be either listed or sold at auction with the proceeds to be divided by the parties with 67% going to

Dedrich R. Koch of Kinney & Koch, LLP Spearfish, South Dakota, Attorneys for appellees.

George and 37% going to Shirley. Shirley moved out of the residence and placed the home for sale. Buyers were found who were willing to pay $100,000, the value set by the divorce court, for the home.

[¶ 3.] A title search by the potential buyers revealed Gail's deed, and Gail was requested to execute a quit claim deed in favor of the prospective buyers. She refused and in August, 2000 she brought a quiet title action. At a hearing in October, 2000, Judge Fitzgerald ordered Shirley to pay the property taxes on the home for 1999, to return and reinstall any fixtures she had removed, to refrain from removing any other fixtures, and to commit no waste on the property. Shirley was to remain as the life tenant, with all of those duties and rights during the pendency of the action.

[¶ 4.] After the death of the trial court judge, Judge Kern was assigned to the case. In July, 2001, she directed the parties to file a statement of all contested issues and dispositive motions. Disposition of the claims was scheduled to occur on September 6, 2001. George, Gail and Shirley filed summary judgment motions. At the hearing, the trial court upheld the warranty deed of the property to Gail and quieted titled in her name. She then reduced the value of Shirley's interest in the home into a money judgment against George. The sale of the home was quashed. On October 3, 2001, the court entered findings of fact and conclusions of law and an order granting Gail's motion for partial summary judgment. On October 4, 2001, the court entered an order granting summary judgment to Shirley against George. Shirley was given a judgment sum against George for $34,678.19 for her interest in the property.

[¶ 5.] On November 25, 2001, Gail filed a motion for waste and property taxes. She alleged that Shirley was liable to her for waste and for taxes incurred on the property during 2000 and 2001. On March 6 and 27, 2002, the court heard testimony on the motions. The court awarded Gail property taxes and other waste damages totaling $3,724.14 with prejudgment interest on everything but the property tax award. Shirley brought a motion for reconsideration and both sides sought Rule 11 sanctions against opposing counsel and parties. The court denied all of the motions. On July 9, 2002, the court entered findings of fact and conclusions of law and its judgment.

[¶ 6.] Shirley appeals raising the following issues:

1. Whether the circuit court had jurisdiction to proceed on Gail's motion for waste after a final judgment was entered in the quiet title action.

2. Whether the circuit court erred in holding Shirley liable for waste and property taxes.

3. Whether the circuit court erred in failing to grant Shirley an offset or credit against the judgment for improvements she made to the property.

[¶ 7.] By notice of review, Gail raises the following issues:

4. Whether the circuit court erred when it denied Gail recovery for damages related to the entertainment center and light fixtures.

5. Whether the circuit court erred in denying prejudgment interest on the award of property taxes.

6. Whether the circuit court abused its discretion in denying treble damages against Shirley for waste.

7. Whether the circuit court erred in refusing to impose Rule 11 sanctions against counsel for Shirley.

We affirm the trial court on Issues 1, 2, 3, 4 and 6 and reverse and remand Issues 5 and 7.

### STANDARD OF REVIEW

[¶ 8.] A trial court's findings of fact will not be set aside unless they are clearly erroneous. *Mid–Century Ins. Co. v. Lyon*, 1997 SD 50, ¶ 4, 562 N.W.2d 888, 890; *Shedd v. Lamb*, 1996 SD 117, ¶ 17, 553 N.W.2d 241, 244. We review conclusions of law under a de novo standard, with no deference to the trial court's conclusions of law. *Id.*

[¶ 9.] **1. WHETHER THE CIRCUIT COURT HAD JURISDICTION TO PROCEED ON GAIL'S MOTION FOR WASTE AFTER A FINAL JUDGMENT WAS RENDERED IN THE QUIET TITLE ACTION.**

[¶ 10.] On October 4, 2001, the trial court entered a judgment granting Gail partial summary judgment and quieting title in her name. None of the parties appealed that decision. On November 30, 2001, Gail filed a "Motion for Waste and Property Damage" and "Affidavit of Gail Thomas" alleging specific instances of waste. These papers were served on Shirley and George's attorneys. No complaint or summons was filed for an action for waste.

[¶ 11.] Shirley argues that the judgment quieting title to the property in Gail was a final judgment and therefore the trial court was without jurisdiction to hear the motion requesting damages for waste. She asserts that since Gail did not make a motion under SDCL 15–6–60 for relief from a final judgment, the circuit court erred in allowing the motion for waste. However, SDCL 15–6–60 is inapplicable. Gail was not seeking relief from the judgment quieting title. Rather, she was requesting damages under SDCL 21–7–1. Therefore, the question is not whether Gail was entitled to relief from the judgment quieting title, but whether the trial court abused its discretion in reopening the proceedings.

[¶ 12.] We have held that, "[t]he reopening of a case to receive additional evidence is a matter within the trial court's discretion and will not be disturbed on appeal except for an abuse of discretion[.]" *Rosen's Inc. v. Juhnke*, 513 N.W.2d 575, 576 (S.D.1994) (quoting 75 AMJur2d Trial § 379 (1991)); *see also, Endres v. Endres*, 532 N.W.2d 65, 72 (S.D.1995). The test to determine whether the court abused its discretion in reopening or refusing to reopen the case is " 'whether we believe a judicial mind, in view of the law and the circumstances, could reasonably have reached that conclusion.' " *Rosen's*, 513 N.W.2d at 576, (quoting *Myron v. Coil*, 82 S.D. 180, 185, 143 N.W.2d 738, 740 (1966) (additional citations omitted)). The trial court possesses "wide discretion in passing on a motion to reopen, and such discretion is to be liberally exercised in behalf of allowing the whole case to be presented, for the best advancement of the ends of justice." *Rosen's*, 513 N.W.2d at 577 (quoting 88 CJS Trial § 108 (1955)).

[¶ 13.] Undoubtedly, it would have been better procedure for Gail to have filed a complaint and summons under a new heading, or filed a specific motion to reopen the case. However, it was not abuse of discretion for the court to reopen the case to hear evidence on waste.

[¶ 14.] Even assuming that the order quieting title in Gail was a final judgment and that on that basis the trial court erred in denying Shirley's motion to dismiss Gail's motion for waste, that error was harmless. SDCL 15–6–61 provides:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting

a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

In this case, vacating the trial court's order allowing Gail damages for waste would serve no purpose but to prolong an already lengthy and contentious battle between these parties.

[¶ 15.] Regardless of whether the quiet title order was a final judgment, Gail would still have been entitled to bring a new complaint and commence an action for waste under a separate heading. Gail would not have been barred by res judicata from filing a new suit for waste damages under SDCL 21–7–1 because although the parties in this action are the same, there is no privity of issues. See generally, *Keith v. Willers Truck Service*, 64 S.D. 274, 266 N.W. 256 (1936). The issue decided in the quiet title action was to whom title to the property belonged. The motion for waste was a new issue, specifically whether Shirley was liable for waste damages for the time she held the property as a life tenant. The waste issue could not have been contemplated or ruled on during the September 6 hearing because until the court's holding on the title, Gail had no legally cognizable rights in the property and therefore could not have determined if there was waste, and if so, the extent thereof. Furthermore, Judge Fitzgerald's order of November 15, 2000 specifically ordered Shirley to return all fixtures and to not commit waste on the property. A suit for damages for waste was the only recourse Gail had to enforce this order and to recover for damages to her property. There has been no showing that the trial court abused its discretion in allowing the case to be reopened.

[¶ 16.] **2. WHETHER THE CIRCUIT COURT ERRED IN HOLDING SHIRLEY LIABLE FOR WASTE AND PROPERTY TAXES.**

[¶ 17.] Shirley alleges that the trial court erred in finding her liable for several incidents of waste and property taxes.

[¶ 18.] SDCL 43–8–2 provides in part that "[t]he owner of a life estate must keep the building and fences in repair from ordinary waste[.]" The trial court found that Shirley failed in this duty by allowing and directing substandard electrical wiring installation by an independent contractor.

[¶ 19.] Both parties' arguments are premised in part on the question of whether Shirley, as employer of the independent contractor, is liable for the contractor's negligence in installing the wiring. These arguments miss the mark. Shirley was found liable not for negligence in the repairs done, but rather in damages for waste. Therefore, the arguments as to who is responsible for the work of the contractor are irrelevant. The dispositive question is whether the faulty wiring constitutes waste. We hold that it does.

[¶ 20.] SDCL 43–8–1 provides, "[t]he owner of a life estate may use the land in the same manner as the owner of a fee simple, except that *he must do no act to the injury of the inheritance*" (emphasis supplied). Shirley's actions with regard to the wiring did injury to Gail's inheritance. First, Shirley hired a contractor to do electrical work who was not an electrical contractor as required by SDCL 36–16–14. Second, Shirley failed to have the work inspected after it was finished as required by SDCL 36–16–15. Third, Shirley failed to repair the faulty wiring. These failures created a dangerous condition on the prop-

erty that required Gail to pay the costs of inspection and repair and Shirley is responsible for the damage as life tenant. There has been no showing that the trial court erred in allowing damages for the repair of the defective wiring.

[¶ 21.] The trial court found Shirley liable for payment of property taxes on the home for the year 2000 and for part of 2001. Shirley alleges the trial court erred in this decision.

[¶ 22.] SDCL 43–8–2 provides in part that the "owner of a life estate must ... pay the taxes and other annual charges, and a just proportion of extraordinary assessments benefiting the whole inheritance." As a matter of law, Shirley retained her life estate in the property until the trial court terminated it on October 3, 2001 in the quiet title action. Thus, according to the statute, she was responsible for taxes on the property.

[¶ 23.] Shirley contends that since she left the property after Judge Davis' order to sell the home, she did not enjoy the benefits of the life tenancy and therefore should not be responsible for the burdens. However, nothing in the South Dakota code indicates that absence from the premises relieves a life tenant from his or her duties to the remainderman. Furthermore, in *Estate of Jackson,* even though the life tenant was confined to a nursing home, this Court still indicated that she retained the duty not to commit waste. *In re Estate of Jackson,* 508 N.W.2d 374, 375 (S.D.1993) (citing SDCL 43–8–1). Finally, although Shirley argues that the legal issue to be determined is whether a life tenant who does not occupy the property is liable for waste, she supplies no authority for the Court's consideration on this issue. Shirley's decision to vacate the property did not relieve her of her duty not to commit waste and to pay the property taxes for the time she was legally entitled to use and enjoyment of the property.

Shirley has shown no error in the trial court's allowance of damages for the property taxes Shirley failed to pay.

[¶ 24.] 3. **WHETHER THE CIRCUIT COURT ERRED IN FAILING TO GRANT SHIRLEY AN OFFSET OR CREDIT AGAINST THE JUDGMENT FOR IMPROVEMENTS SHE MADE TO THE PROPERTY.**

[¶ 25.] In the divorce proceeding, Judge Davis found that Shirley had made improvements to the home valued at approximately $6000.00. Shirley argues that the trial court erred in refusing to grant her a credit or an offset of Gail's recovery in that amount. The general rule at common law is that a life tenant who makes improvements on the realty with knowledge of her title is presumed to have made those improvements for her own benefit and cannot recover for those improvements from the remaindermen. *Johnson v. Hendrickson,* 71 S.D. 392, 398, 24 N.W.2d 914, 917 (1946). Furthermore, Shirley was already compensated for those improvements in the divorce action. Judge Davis took the value of the improvements into consideration when he determined Shirley's contribution to the marital estate. Finally, Shirley cited no authority either here or before the trial court for the proposition that a life tenant is entitled to such an offset. Without such authority, Shirley fails to show that the trial court erred when it denied her a credit or an offset for improvements she made to the property.

[¶ 26.] 4. **WHETHER THE CIRCUIT COURT ERRED WHEN IT DENIED GAIL RECOVERY FOR DAMAGES RELATED TO THE ENTERTAINMENT CENTER AND LIGHT FIXTURES.**

[¶ 27.] By notice of review, Gail argues that the trial court erred when it

denied her damages for removal of an entertainment center and light fixtures from the property.

[¶ 28.] The entertainment center was built specifically for the home and was attached to a wall in the home by two screws. Gail argues that these facts should have led the court to the conclusion that the entertainment center was a fixture which Shirley was not permitted to remove from the home but nonetheless did.

[¶ 29.] At the first hearing on the quiet title action, Judge Fitzgerald ordered Shirley to return and reinstall the fixtures she removed from the home. The entertainment center had already been removed from the house. Gail argues that she is entitled to damages for the cost of reinstallation of the entertainment center. Shirley contends that she was expressly ordered on June 20, 2000, by Judge Davis to sell the entertainment center. The record does not support this assertion. Shirley was ordered, on June 22, 2000, to either return the entertainment center to the home or to pay George one-half of its value.

[¶ 30.] The record reveals that on August 15, 2000, George consigned the entertainment center and it was sold at auction. The sale price was divided between Shirley and George. Therefore, by the time Judge Fitzgerald ordered the return of removed fixtures, the parties to the divorce had already complied with Judge Davis' order and split the proceeds of the entertainment center. Thus, Gail's reliance on Judge Fitzgerald's order to return and reinstall fixtures is misplaced. Judge Fitzgerald's order could not have applied to the entertainment center because this issue had already been disposed of and ruled upon in the divorce proceeding.

[¶ 31.] Furthermore, we can find no error in the trial court's determination that the entertainment center was not a fixture. SDCL 43–33–1 provides,

A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines or shrubs; or imbedded in it, as in the case of walls; or permanently resting upon it, as in the case of buildings; or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts or screws.

There is no dispute that this entertainment center was attached to the wall with two screws. However, the record does not support a finding that the entertainment center was in fact a permanent fixture. First, testimony at trial indicated that this unit could have been a free standing unit. Second, Forrest Dale Lewis, the person commissioned to build the entertainment center, testified that the screws were only put in at the top of the cabinet to insure that it would not topple over. Finally, in discussing the use of the screws, Lewis testified, "It was not classified as what I understand real property to be *because it was not permanently affixed to the building.*" (emphasis supplied). This does not support a finding that the entertainment center was a permanent fixture and therefore the trial court committed no error in refusing to award damages for the entertainment center.

[¶ 32.] Prior to the divorce action, the home contained a crystal chandelier and a wagon wheel chandelier. Gail argues that the court erred in denying her damages for light fixtures because both chandeliers were removed from the home prior to Gail taking possession. The record reveals that George took the wagon wheel chandelier. Shirley received the crystal chandelier as a gift from a former husband and she removed it from the property while the divorce was pending. The trial court refused to award waste

damages on this issue 1) because George had the wagon wheel chandelier and 2) low grade light fixtures had been placed in the home. We find no error in the court's decision on this issue and affirm.

**[¶33.] 5. WHETHER THE CIRCUIT COURT ERRED IN DENYING PREJUDGMENT INTEREST FOR THE AWARD OF PROPERTY TAXES.**

[¶34.] Gail contends that the court erred in denying her an award of prejudgment interest on the property taxes. SDCL 21-1-13.1 provides in part,

[a]ny person entitled to recover damages ... is entitled to recover interest thereon from the day that the loss or damage occurred ... [t]he court shall compute and award the interest provided in this section and shall include such interest in the judgment in the same manner as it taxes costs.

We have acknowledged that SDCL 21-1-13.1 makes an award of prejudgment interest mandatory rather than discretionary. *Alvine v. Mercedes–Benz of No. Amer.*, 2001 SD 3, ¶ 29, 620 N.W.2d 608, 614. The circuit court erred in failing to award prejudgment interest on the property taxes. While the trial court's belief that the mass of litigation left no one entirely certain as to who owed property taxes is true, the statute is clear and the trial court retains no discretion to deny prejudgment interest. We reverse the trial court's holding on this issue and remand for a determination of the amount of prejudgment interest owed by Shirley.

**[¶35.] 6. WHETHER THE CIRCUIT COURT ABUSED ITS DISCRETION IN DENYING TREBLE DAMAGES AGAINST SHIRLEY FOR WASTE.**

[¶36.] Gail argues that the trial court erred in denying her claim for treble damages against Shirley. SDCL 21-7-1 provides:

[i]f a conservator, tenant for life or years, joint tenant, or tenant in common of real property, commits waste thereon, any person aggrieved by the waste may bring an action against him, in which action there may be judgment for treble damages, forfeiture of the estate of the party offending, and eviction from the premises.

We have held that treble damages are to be awarded under this statute only when they are supported by a finding that the waste was willful, wanton or malicious or in utter disregard for the rights of those who were thereafter to take possession of the property. *Regan v. Moyle Petroleum Co.*, 344 N.W.2d 695, 697 (S.D.1984). Gail asserts that Shirley's actions were in "utter disregard for [Gail's] rights." The trial court, sitting as the trier of fact, found otherwise. The statute makes the imposition of treble damages discretionary, and Gail has shown no abuse of discretion in the trial court's decision. The trial court is affirmed on this issue.

**[¶37.] 7. WHETHER THE CIRCUIT COURT ERRED IN DENYING RULE 11 SANCTIONS AGAINST SHIRLEY'S COUNSEL.**

[¶38.] SDCL 15-6-11(a) provides in part,

[e]very pleading, motion and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name[.] [T]he signature of an attorney or party constitutes a certificate by him ... that it is not interposed for any improper purpose, such as to harass, embarrass another party or person, or to cause unnecessary delay or needless increase in the cost of litigation.

SDCL 15–6–11(b) provides that if any submission is signed or filed in violation of 15–6–11(a), the court, upon motion or its own initiative, "shall impose upon the person who signed or filed it . . . an appropriate sanction[.]"

[¶ 39.] Gail asserts that the trial court erred in refusing to impose sanctions against Shirley's attorney, Benjamin J. Eicher.* Specifically, she asserts that in various writings before the trial court, Eicher made assertions and statements for the primary purpose of embarrassing and insulting Gail and her attorney. We agree. A sample of the statements submitted to the court by Eicher show that Eicher went beyond zealous advocacy. For example, in the document entitled "Shirley Thomas' Reply to Gail Thomas' Brief in Support of Motion for Waste and Property Taxes," Eicher made the following comments:

"Gail's attempt to avoid any burden at all from her great bounty . . . is shockingly greedy, to put it bluntly."

"Gail continues to not only want her pound of flesh, but wants all of the blood associated with it."

"Gail's greed is stunningly bold."

". . . [Gail's] adamant persistence in trying to make Shirley accountable, belies an active, rancid animosity against Shirley which not only defies logic but apparently knows no bounds."

"Then, to make certain that her fangs are fully bared for all to see, Gail hurls yet another dose of acidic bile at Shirley."

"Gail's despicable greed should not be rewarded."

[¶ 40.] Eicher also included in his brief entitled "Shirley Thomas' Memorandum of Law for Reconsideration," his thoughts on the competence and intelligence of opposing counsel. An excerpt from this brief supports Gail's assertion that the writing was done for the purpose of embarrassing her counsel:

Our present system is clogged with specious claims by novice lawyers. It is clogged with positions which have no basis in fact or law, as if 'lawyering' means to disagree with whatever the other side says . . . When the undersigned thinks of what his mentor . . . would have said had the undersigned taken the positions adopted here in this case by Gail and her counsel, it is not an exaggeration to say that a long lecture in 'good lawyering' would have occurred. · However, without mentoring and without an eye toward quality practicing, Gail and her counsel simply fire away with a blunderbuss as much buckshot as possible, even if it is improper, unmerited, groundless or just plain wrong-with the comfort of knowing that all the court will do is reject the position . . . Just like a child who grows up undisciplined because the parents failed to provide appropriately strict guidance, when lawyers dump their half-baked or completely uninvestigated contentions on the courtroom floor without correction, then it's no wonder that they never learn to

---

* Eicher argues that this Court may not review this question because the circuit court entered no findings of fact and conclusions of law as to this issue pursuant to SDCL 15–6–11(c). However, the findings of fact and conclusions of law specifically incorporate the trial court's oral rulings and as such, sufficiently address the issue of sanctions.

At the hearing on April 22, 2002, where the court issued its rulings on all issues, the court addressed sanctions against Eicher stating in part, "[i]t [is] unfortunate that this litigation has been so contentious. Part of that animosity comes from the parties themselves. And Counsel, it appears to the court, became embroiled in that animosity between the litigants."

do things differently (i.e. correctly) next time.

[¶ 41.] In defense of his offensive statements, Eicher argues that there have been instances in which this Court has denied sanctions where the attorneys have said "worse" things about opposing counsel. The fact that other attorneys have behaved badly is not an adequate defense for Eicher's behavior.

 [¶ 42.] It is presumed that attorneys will act as vigorous advocates for their clients. However, personal attacks on opposing parties and their counsel do not fall within the bounds of vigorous advocacy. Eicher blatantly impugned the competence, intelligence, experience and ability of opposing counsel and he made frankly offensive and unwarranted personal attacks on Gail. His writings added nothing to the determination of legal issues and only worked to inflame opposing counsel. This issue is remanded to the trial court for imposition of appropriate sanctions against Eicher for his uncivil behavior.

### ATTORNEY FEES

[¶ 43.] Shirley has petitioned the Court for $365.58 in appellate attorney fees in accordance with SDCL 15–6–11(d). This statute provides in part that "[r]easonable attorney's fees and costs shall be awarded to the successful party on appeal" in cases where Rule 11 sanctions are at issue. Because she did not prevail on appeal, Shirley is not entitled to attorney fees and costs.

[¶ 44.] We affirm Issues 1, 2, 3, 4, and 6. Issue 5 is reversed and remanded for calculation and award of prejudgment interest. Issue 7 is reversed and remanded for imposition of appropriate Rule 11 sanctions.

[¶ 45.] GILBERTSON, Chief Justice, and ZINTER and MEIERHENRY, Justices, and MILLER, Retired Justice, concur.

[¶ 46.] MILLER, Retired Justice, sitting for KONENKAMP, Justice, disqualified.