In Re Disbarment of JOHN K. SWIHART and CLARENCE M. BRANSON.

(177 N. W. 364.)

(File No. 4692. Opinion filed March 16, 1920.)

1. **Disbarment—Law Collection Firm As "Detective Agency"—Mailing To Debtors "Demand Before Suit" Purporting to be Process—Letter to Debtor Demanding Pay "For What She Wears," and Threatening Execution and Suggesting "Safety First"—Practice Condemned—Defense That Other Collection Agencies Did Same, Futility.**

In a proceeding for disbarment of members of a law firm who, among other things, are shown to have been doing a

collection business under the fictitious name of "Watkins Detective Agency" and "Watkins Detective Service," using the word "detective" for the effect it might have in intimidating the weak and ignorant against whom they might hold claims for collection, and to have advertised in newspapers much like a mercantile establishment would advertise wares, etc., and to have mailed to debtors a so-called "Final Demand Before Suit," purporting to be a legal writ or process with its blanks unfilled, and signed by the firm name, as "Attorneys for Plaintiff," under which was written over their signature, "It is hereby ordered that due and legal service hereof be made, by mailing same to said defendant at his last known post-office address," which "demand" was originally entitled in the Municipal Court, but was eventually in their practice stricken out, and had thereafter for a period of about a year and until the judge of the Municipal Court advised them to discontinue the practice, been in the habit of mailing to some of those against whom they held claims for collections, summons in regular form having been sent out in the hopes that by their use, ignorant and weak defendants would be frightened into making settlements, or to appear in court believing legal process had been made; held, that the defense, as regarded their style of newspaper publication and the forms of letters and notices sent out by them, that other collection agencies did the same thing, is unavailing; the alleged forms used by such other agencies in some large cities not purporting to be issued in name of any state, nor to be used from any court, although the use of such other forms is open to criticism, while those used by the defendants were much more to be condemned.

2.    Same—Duty of Attorneys as Officers of Court—Rights of Client Limited by Law—"End Justifies Means," Inadmissible Practice.

Attorneys should never forget they are officers of court; that justice under the law is all their clients are entitled to and all they have a right to seek for them; that theirs is an honorable profession, whose true votaries never try to justify their acts on the old saw "The end justifies the means"; that while collection of money is legitimate work, it is a sad commentary on the legal profession that there are attorneys willing to resort to any and all means to make collections.

3.    Attorney and Client—Disbarment—Law Firm Advertising As "Detective Agency," Unethical Practice.

For a law firm as S. & B., in connection with and as part of their collection business, to advertise in newspapers much like a mercantile establishment would advertise its wares, etc., under the fictitious name of "Watkins Detective Agency" and

"Watkins Detective Service," using the word "detective" not because their business was that of detective, but for the effect such word might have in intimidating the weak and ignorant against whom they might hold claims for collection, is unethical.

4.   Same—Law Firm Mailing Notices Resembling Process, Unprofessional Practice

For a law firm to mail to persons against whom they hold claims for collections, and in order to mislead and frighten them, a so-called 'Final Demand Before Suit," purporting to be a legal writ or process, with blanks unfilled and regularly entitled in a municipal court, but with blank spaces for plaintiff and defendant unfilled, and running in name of State of South Dakota, and stating in their body that plaintiff claims the addressee is indebted in a specified sum, that same has not been paid, and that unless addressee remits to, or appears at office of the collection firm at a designated place on or before a specified date and hour, "suit will forthwith be entered for total amount with interest," etc., and signed by the law firm as attorneys for plaintiff; under which signature is inserted: "It is hereby ordered that due and legal service hereof be made by mailing same to said defendant at his last known postoffice address," which additional language is similarly subscribed,—is unprofessional.

5.   Same—Mailing Summons in Regular Form, Unlawful Practice.

For a firm of collecting attorneys to mail summonses in the hope that the recipient debtors will take their receipt as the equivalent of personal service of summons, is unlawful law practice.

6.   Same—Mailing Letter to Debtor Insinuating Addressee "Should Be Willing To Do Something Toward Paying for Clothes She Wears," And Threatening Judgment Execution—Disrespecting Practice.

For a firm of collection attorneys to send out a letter addressed to a debtor, a married woman employed at manual labor on monthly salary while her husband was in federal military service, against which woman they held a claim for collection, informing that creditor has instructed "to begin another series of actions to secure the money which you owe them for clothes to cover your nakedness," and that "It would seem that a woman who respects herself and who has the means of payment should be willing to do at least something toward paying for the clothes she wears on her back. Are you a woman who does pay for what she does wear or who does not?" and that they are ready to issue execution through sheriff's levy, etc., and that "unless this debt of ................................................ is paid we may take steps which

will astonish you. We believe 'safety first' would be a good motto for you," such notice being signed by the attorneys— is beneath the dignity of any self-respecting attorney.

7. **Same—Appealed-from Garnishment, Procuring Second Garnishment Pending Appeal—Unjustified Oppression.**

For said attorneys, after having procured garnishment against said woman in a pending suit, garnishing her wages, which were claimed and allowed as exempt, and who, after they had appealed to circuit court from municipal court, and, pending decision on appeal, to garnish her next month's wages, was an act of oppression absolutely unjustified.

8. **Same—Issuing Posters To Debtor Listing Judgments for Sale, and That "Additional Offerings Would Be Advertised"—Blackmail, Contemptible Practice—Suspension, Not Disbarment.**

For said attorneys to issue and to mail to persons against whom they held claims for collections not yet reduced to judgments posters listing judgments for sale, with name of each debtor, his place of residence, amount of each judgment with information that additional offerings would be advertised later, this for the apparent purpose of blackmailing those against whom they held claims for collection; it being evident that they could not have hoped to find purchasers for these judgments among said debtors—is contemptable in the extreme. **Held**, further, that any attorney persisting in such wrongdoing as is evidenced by the various practices found to have been followed by defendants, is an unfit person to be entrusted with the powers for good or ill possessed by an attorney at law. But having full appreciation of what it means, to one who has chosen the legal profession as his life work, to lose the privilege of practicing such profession; and defendants not having tried to conceal from the court their wrongdoing, but having been exceedingly frank in their admissions, and having expressed earnest desire to conform future conduct with best professional ideals, Court does not feel they have been shown so unfit to practice law as to require judgment of disbarment; and they will stand suspended from law practice for the period of six months.

McCoy, J., not sitting.

Original proceedings, for the disbarment of John K. Swihart and Clarence M. Branson. Defendants adjudged suspended from practice of the law for the period of six months.

· No counsel appearing.

WHITING, J. The issues in this proceeding were brought on for trial before this court on March 16, 1920. At the termi-

nation of the trial, we announced our decision to the effect that defendants should stand suspended for six months, and stated that the written opinion would be prepared and filed later. Findings of fact and conclusions of law have been rendered. We found defendants guilty of unprofessional conduct, which wrongful conduct was in part as follows:

As partners they engaged in a collection business under the fictitious names of "Watkins Detective Agency" and "Watkins Detective Service." They used the word "Detective," not because their business was that of detectives, but for the effect that such word might have in intimidating the weak and ignorant against whom they might hold claims for collection. They advertised in newspapers much like a mercantile establishment would advertise its wares or a real estate agent his business.

In order to mislead the ignorant and frighten the timid against whom they held claims for collection, they mailed to them a so-called "final demand before suit." This demand purported on its face to be a legal writ or process. With its blanks unfilled such "demand" was as follows:

"State of South Dakota, County of Brown—ss.:
"In Municipal Court, City of Aberdeen, South Dakota.
"_____, Plaintiff, v. _____, Defendant.
"Final Demand Before Suit.
"The State of South Dakota to the Above-Named Defendant:
"Take legal notice:
"First. That the above-named plaintiff claims that you are indebted to _____ in the sum of _____
"Second. Although duly requested, the same has not been paid, nor any part thereof, save and except the sum of _____ _____ dollars, and that _____ is the balance legally due and owing hereon, plus accrued interest.
"Third. Now, therefore, unless you remit to, or appear at the office of Swihart & Branson, lawyers, rooms 21 and 24, Hagerty Block, in the city of Aberdeen, county of Brown, and state of South Dakota, on or before the _____ day of _____, _____, at 2 o'clock p. m. of said day, for the payment of said claim with interest thereon at the rate of

7 per cent. per annum from the date of maturity, or make proper provisions for ths adjustment thereof, suit will forthwith be entered for the total amount with interest, together with the costs and disbursements of the action.

"Dated at Aberdeen, South Dakota, this ........................................... day of ......................................................, .................. Swihart & Branson, Attorneys for the Plaintiff, Aberdeen, South Dakota.·

·"It is hereby ordered that due and legal service hereof be made by mailing same to said defendant at his last known post office address. Swihart & Branson, Attorneys for the Plaintiff."

Eventually they struck from the above the words "In Municipal Court, City of Aberdeen, South Dakota," and as so changed continued to use it up to the beginning of this proceeding.

For a period of about a year, and until the judge of the municipal court advised them to discontinue such practice, they were in the habit of issuing and mailing, to at least some of those against whom they held claims for collection, summonses in regular form, issued in the name of the state of South Dakota, and directing the defendants therein named to appear in such court. Such summonses were, as we find, sent out in the hopes that, by their use, ignorant and weak defendants would be frightened into making settlements, or at least led to appear in court under the belief that legal service of process had been made upon them.

Defendants issued posters listing judgments for sale. These posters named each debtor, his place of residence, amount of each judgment, and they also contained the information that additional offerings would be advertised later. For the very apparent purpose of blackmailing those against whom they held for collection claims not yet reduced to judgment, they mailed to them these posters. Defendants could not have hoped to find purchasers for these judgments among those against whom they held uncollected claims; the purpose of sending these posters to such parties is too clear to admit of doubt.

A certain married woman resident of Aberdeen was employed at manual labor on a monthly salary while her husband was in the military service of the United States. Without the

slightest apparent justification for sending her such a letter, they sent to her the following:

"Swihart & Branson, Lawyers

"Aberdeen, S. D., January 25, 1919.

" ....................................................................

" ....................................................................

"Aberdeen, S. D.

"Dear Madam: The ...................................... has instructed us to begin another series of action to secure the money which you owe them for clothes to cover your nakedness.

"It would seem that a woman who respects herself and who has the means of payment should be willing to do at least something toward paying for the clothes she wears on her back. Are you a woman who does pay for what she wears, or who does not?·

"You are aware that we have a judgment, and that we are now ready to secure an execution and turn the matter over to the sheriff's attention for levy, seizure, and sale under execution.

"If you care to do anything about this matter we are going to give you the opportunity if you do something at once.

"You may be of the opinion that this office has been stumbling along and does not have men who have their eyes open. We are not disposed to embarrass·nor inconvenience you, but unless this debt of ...................................... is paid we may take steps which will astonish you.

"We believe 'safety first' would be a good motto for you.

"Yours very truly,

"C. M. BRANSON.

"CMB. LMH."

They then brought suit against her in municipal court, garnishing her wages. These were claimed as exempt, and the exemption allowed. They appealed to the circuit court, and, pending a decision in the circuit court, garnished her next month's wages.

[1] Defendants professed to have been of the opinion, at the time they mailed the final demand notices and the summonses,

that what they were doing was both morally right and perfectly lawful.  Furthermore, they sought to excuse their style of newspaper publications and the forms of letters and notices sent out by them, under the claim that other collection agencies did the same thing.  They offered in evidence forms which were used by such agencies in some of. the large cities.  It is noticeable, however, that such forms did not purport to be issued in the name of any state, nor to be issued from any court.  The use of even such forms of notice as those offered in evidence by defendants is open to criticism; but the forms used by them were much more to be condemned.

[2] It is unnecessary for us to enter into any long discussion of the facts before us.  Attorneys should never forget that they are officers of the court; that justice under the law is all that their clients are entitled to and all that they have a right to seek for them; that theirs is an honorable profession whose true votaries never try to justify their acts on the old saw, "The end justifies the means."  The collection of claims is a legitimate field of work; but it is a sad commentary on the legal profession that there are attorneys who are willing to resort to any and all means to make collections, knowing that they are many creditors who care little the means that are used by their collectors so long as the desired end is gained.

[3-8] To advertise as defendants did is unethical; to send out notices which might readily be taken as legal writs or processes is unprofessional; to mail summonses in the hope that the recipient will take their receipt as the equivalent of personal service is unlawful; to send out a letter such as the one above referred to is beneath the dignity of any self-respecting attorney; to resort to the second garnishment in the case referred to was an act of oppression absolutely unjustified; to attempt to blackmail debtors by means of implied threats such as those contained in the. posters, and the above-quoted letter sent out by defendants, is contemptible in the extreme.

[9] We have no hesitancy in holding that any one who persists in such wrongdoing is an unfit person to be intrusted with the great powers for good or ill possessed by an attorney at law.  Upon the other hand, we have a full appreciation of

what it means, to one who has chosen the profession of the law as his life work, to lose the privilege of practicing such profession. We have had occasion to dwell on this point in other disbarment proceedings, so that our position is well known. State v. Kirby, 36 S. D. 188, 154 N. W. 284; In re Egan, 37 S. D. 159, 157 N. W. 310.

Defendants have not tried to conceal from us their wrong-doing; upon the other hand, they have been exceedingly frank in their admissions. They express most earnest desires to conform their future conduct with the best ideals of their profession. We do not feel that they have been shown so unfit to practice their profession as to require that a judgment of disbarment should be entered against them. On the other hand, we feel that they will come to a fuller and truer realization of what it means to be intrusted with the licenses which they have held if such licenses are taken from them for a short period.

Defendants will stand suspended for the period of six months from March 16, 1920, from the practice of the law before any of the courts of this state, and from giving advice or in any other manner acting as attorneys at law in this state.

McCOY, J., not sitting.