2003 SD 40

**In the Matter of the DISCIPLINE OF Benjamin J. EICHER, as an Attorney at Law.**

No. 22523.

Supreme Court of South Dakota.

Argued March 26, 2003.

Decided April 16, 2003.

Robert B. Frieberg, Beresford, South Dakota, for Disciplinary Board.

Ronald W. Banks of Banks, Johnson, Colbath & Kerr, Rapid City, for Eicher.

## ORIGINAL PROCEEDING

GILBERTSON, Chief Justice.

[¶ 1.] This is a disciplinary proceeding against Benjamin J. Eicher, a member of the State Bar of South Dakota. The Disciplinary Board of the State Bar of South Dakota has recommended public censure. The Referee has recommended a public censure on some issues and a private reprimand on another. Eicher urges the Court to hold that he "committed no violations of the Rules of Professional conduct for which reprimand of any kind is appropriate."

## GENERAL BACKGROUND

[¶ 2.] Eicher is not married and has no children. He sponsors a baseball team, writes for a Los Angeles music newsletter, and is on the community advisory board of an Indian radio station. Eicher has a strong interest in theology.

[¶ 3.] Eicher is a 1985 graduate of the University of Nebraska School of Law. After passing the bar examination he was admitted to practice law in South Dakota. He practiced law in Rapid City with Franklin J. Wallahan until Wallahan's death in 1994. Eicher has been a sole practitioner since that time. He specializes in litigation and insurance defense.

[¶ 4.] Eicher has been the subject of four previous disciplinary complaints. The first, in 1992, was dismissed. The second, in 1997, was dismissed with a caution. The third, in 1998, was dismissed and expunged. Eicher received an admonition for the fourth in 2001. An admonition is a finding that a lawyer violated one or more of the Rules of Professional Conduct, but did not warrant a private reprimand. Three additional complaints are pending in this disciplinary proceeding.

## KOCH COMPLAINT

[¶ 5.] On April 16, 2002 Spearfish attorney Dedrich R. Koch filed a complaint with the Disciplinary Board concerning Eicher's conduct in a civil action, *Thomas v. Thomas. See Thomas v. Thomas,* 2003 SD 39, 661 N.W.2d 1. In the course of the lawsuit, Koch, who represented Gail Thomas, and Eicher, who represented Shirley M. Thomas, filed various motions and pretrial briefs and memorandums for Circuit Judge Kern's consideration. Koch attached these to his complaint and told the Board:

Although I personally find Mr. Eicher's repeated threats and claims for sanctions to be unsupported, meritless and unprofessional, it is the personal attacks and insults hurled by Mr. Eicher at my client and me that I can not ignore. Vigorously attacking the allegations or criticizing the tactics of an opponent does not necessitate or allow the use of such blatantly offensive comments and I hope the disciplinary board will take the necessary steps to inform Mr. Eicher of the same.

[¶ 6.] In a document titled "Shirley Thomas' Reply to Gail Thomas' Brief in Support of Motion for Waste and Property Taxes" Eicher wrote, in part:

- Gail's attempt to avoid any burden at all from her great bounty (it is assumed that no one would even try to argue that receiving title to $100,000 in unencumbered property without paying the giver a penny for it constitutes a "great bounty"), is shockingly greedy, to put it bluntly.
- Gail continues to not only want her pound of flesh from Shirley, but wants all of the blood associated with it.
- Gail's greed is stunningly bold.
- Then, to make certain that her fangs are fully bared for all to see, Gail hurls yet another dose of acidic bile at Shirley. Gail accuses Shirley of criminal misconduct ... Perhaps Gail plans to have Shirley arrested, and hauled from the courtroom on March 27 in shackles, too.
- Gail's arguments on these matters are so utterly fallacious, groundless, and frivolous, that they constitute plain violations of Rule 11.
- Gail's despicable greed should not be rewarded.
- Gail's ... adamant persistence in trying to make Shirley accountable, belies an active, rancid animosity against

Shirley which not only defies logic but apparently knows no bounds.

[¶ 7.] Following Judge Kern's oral bench decision which was adverse to Eicher's client, Eicher filed a "Memorandum of Law for Reconsideration." In it he chastised Judge Kern:

The Court attempted to issue its oral bench decision on March 27 in the scant moments left on the Court's clock at that specific time. It is presumed that had the Court sufficient additional time available, a more fully described and reasonably in-depth discussion would have been made by the Court of its findings of fact and its conclusions of law. Instead, the parties were only given an extremely brief set of conclusory statements of the ultimate result. However, the "bottom line" approach presented by the Court offers little if any guidance as to the Court's (as opposed to Gail Thomas' counsel's when the Findings and Conclusions are drafted) reasoning behind the specific rulings found within the penumbra of that "bottom line." Moreover, the Court gave no reasons at all for denial of Shirley's request for sanctions under Rule 11 of the Rules of Civil Procedure, even though the statutory provisions mandate entry of specific findings and conclusions whether such sanctions are granted or denied.

In this document Eicher also lectured the trial court about his view of Koch's legal ability:

Our present system is clogged with specious claims brought by novice lawyers. It is clogged with positions which have no basis in fact or law, as if "lawyering" means to disagree with whatever the other side says. The circuit court judges see enough of this. But, the Court should be well aware that for

every example played out before it in open court, are hundreds of instances "behind the scenes" which never see the inside of a court file or the courtroom. Formerly, there was a greater amount of mentoring by older, experienced lawyers to guide novice attorneys. When the undersigned thinks of what his mentor, the late (and great) Franklin J. Wallahan would have said had the undersigned taken the positions adopted here in this case by Gail and her counsel, it is not an exaggeration to say that a long lecture in "good lawyering" would have occurred as a result. However, without mentoring and without an eye toward quality practicing, Gail and her counsel simply fire away with a blunderbuss as much buckshot as possible— even if it is improper, unmerited, groundless or just plain wrong—with the comfort of knowing that all the Court will do is reject the position. In other words, there is no real downside. But this is where Rule 11 especially was geared to not only protect the innocent opponent, but to punish the wrongdoers. Just like a child who grows up undisciplined because the parents failed to provide appropriately strict guidance, when lawyers dump their half-baked or completely uninvestigated contentions on the courtroom floor without any correction, then it's no wonder that they never learn to do things differently (i.e., correctly) next time.

[¶ 8.] On April 23, 2002 Eicher received notice of Koch's disciplinary complaint against him. Eicher immediately faxed a letter to Koch suggesting that he withdraw the disciplinary complaint against Eicher or face an appeal in the *Thomas* matter. The letter also implied that Eicher would file a disciplinary complaint against Koch. This letter stated, in part:

Dear Deach:

I am confirming the terms of our discussion on the Bar Association matter in this case. My suggestion is that instead of having your client face an appeal from the above action if we proceed with the Bar Association contentions (i.e., mutual complaints), which will occur if I have to obtain the transcript to defend myself against your contentions and to put the matter wholly in context, we jointly approach the Bar Association as follows.

I would think a letter signed by both you and me, to the Bar Association, saying something as follows would suffice:

This is a joint letter by Dedrich Koch and Benjamin Eicher regarding a disciplinary complaint submitted by Attorney Koch against Attorney Eicher. We jointly agree that the disciplinary complaint is hereby withdrawn. On April 22, 2002 a hearing was held before Judge Kern wherein she denied relief to Attorney Koch based upon similar allegations against Attorney Eicher as those in the disciplinary complaint, as well as denying Rule 11 sanctions against Attorney Koch. Attorney Koch and Attorney Eicher have resolved their differences, personal and professional, and do not wish to involve the disciplinary board further. It is assumed that this letter will suffice to close the matter, unless different instructions are given to us.

Koch refused to accept Eicher's proposal.

[¶ 9.] On April 23, 2002 Eicher also wrote letters to Judge Kern and court reporter Jean A. Kappedal regarding the *Thomas* case. His letter to Judge Kern begins, "Certain conduct by Mr. Koch has led to the necessity of an appeal in this action. It is unfortunate but it remains a reality." His letter to Ms. Kappedal begins, "Because Mr. Koch could not leave well enough alone, we are going to have an appeal from this case after the parties

submit their respective Findings of Fact, Conclusions of Law, and Judgments[.]"

## CLAYBORNE COMPLAINT

[¶ 10.] On April 22, 2002 Rapid City attorney Courtney R. Clayborne filed a complaint with the Disciplinary Board concerning Eicher's conduct in a criminal court trial held February 8, 2002.

[¶ 11.] Eicher represented Shawna Martin who was accused of stealing money from her employer. Clayborne represented her employer and was the first witness called during Martin's criminal trial. Clayborne testified that he had spoken with Martin who admitted to him that she had taken money from her employer on two or three occasions. He also testified that he had watched two videotapes supplied by Martin's employer which showed Martin stealing money.

[¶ 12.] Eicher, in open court and "as an officer of the court" moved to dismiss the charges because the State no longer had the videotapes of Martin in its possession. Eicher told the trial court that he had watched the videotapes and they showed Martin "didn't take anything." He claimed that the videotapes were "Defendant's best evidence" "because of what it shows and what it doesn't show. It's our best evidence because the other testimony would be that people are in and out of that [money] bag all the time." He argued, "It's manifest that when the State loses evidence, that is significant it is grossly prejudicial to the defendant[.]" It deprived him of evidence necessary to cross examine witnesses.

[¶ 13.] Eicher did not tell the trial court that he possessed copies of the videotapes. He received them from one of the employer's attorneys seven months earlier in a civil proceeding Martin initiated. During a break in the criminal trial Clayborne confronted Eicher and told him that it was unethical and misleading to fail to tell the court that he had copies of the videotape. Following the recess, Eicher told the court of Clayborne's accusation. He admitted that he had copies of the videotapes but did not bring them. He told the court that "I haven't misled the court about anything. The official tapes that are in evidence are not here." He also told the court, "[b]ut for [Clayborne] to accuse me of unethical conduct is about how low we've got to this thing."

## BOARD GENERATED COMPLAINT

[¶ 14.] On July 18, 2001 Eicher filed a complaint with the Disciplinary Board against Attorney M for his conduct in the Bernardo case. The Board dismissed the complaint with a caution. A dismissal with a caution is a determination that while there was no violation of the Rules of Professional Conduct there was an advisory to improve the respondent lawyer's office practice or relations with other lawyers or clients.

[¶ 15.] In the course of investigating Eicher's complaint against Attorney M the Board discovered a series of fourteen letters Eicher wrote to Attorney M and a member of his firm in the course of a year regarding the Bernardo case and the Bird Hat case. In each case, Eicher warned Attorney M that he would seek Rule 11 sanctions and allege barratry and a frivolous action counterclaim if Attorney M did not take the actions Eicher requested. He advised Attorney M that if he took the action Eicher suggested there would be "no need to report the problem to the bar association." If Attorney M did not take the action Eicher "will be filing a complaint with the Bar Association's disciplinary board. So be it."

## EICHER GENERATED COMPLAINTS

[¶ 16.] On May 2, 2002 the Disciplinary Board hand delivered a letter to Eicher

informing him of correspondence discovered in the course of investigating his July 18, 2001 complaint against Attorney M concerning the Bernardo case. Eicher responded that day by hand delivering a second Disciplinary Board complaint against Attorney M concerning the Bird Hat case. The Board investigated and dismissed the complaint with a caution.

[¶ 17.] On May 15, 2002 Eicher filed separate complaints against Koch and Clayborne. On May 15, 2002 and May 20, 2002 Eicher filed separate complaints against two members of Clayborne's law firm. The Board investigated the four complaints and then dismissed and expunged all of them.[1]

[¶ 18.] The Secretary–Treasurer of the State Bar filed an affidavit advising that he examined all of the Disciplinary Board records since 1989. No person, lawyer or non-lawyer, has filed as many complaints against lawyers as has Eicher, who has filed seven. Three were dismissed with a caution, four were dismissed and expunged.[2]

## DISCIPLINARY BOARD

[¶ 19.] Following a hearing the Disciplinary Board entered findings of fact and conclusions of law. Included in its findings were:

20. [Eicher's] responses to the Disciplinary Board were not forthright and lacked candor. He refused to answer questions directly. [Eicher] claimed ignorance or misapprehension of the applicable rules.

[Eicher] claimed that the Disciplinary Board had required him to assert the meritless complaints mentioned in findings 11 and 21, above, which claim was false.

21. [Eicher's] conduct demonstrates a persistent practice prejudicial to the administration of justice of directing exceptionally harsh, vindictive and insulting communication to opposing counsel that serve no purpose, but aim to harass opposing counsel and their clients and result in burdening the justice system with unnecessary expense and acrimony.

[¶ 20.] The Disciplinary Board concluded:

A. [Eicher] has violated S.D.C.L. 16–18–14 concerning respect for parties and witnesses.

B. [Eicher] has violated S.D.C.L. 16–18–16 concerning the commencement or continuance of an action or proceeding for any motive of passion or interest.

C. [Eicher] has violated S.D.C.L. 16–18–19 concerning an attorney's duty to use such means only as are consistent with the truth, and never seek to mislead the judges by any artifice or false statement of fact or law.

D. [Eicher] has violated the following Rules of Professional Conduct:

(1) Rule 3.1 concerning frivolous claims;

---

1. Under Rule VIII(A) of the Rules of Procedure of the Disciplinary Board may dismiss a complaint if frivolous or clearly unfounded in fact. It may expunge a frivolous or clearly unfounded complaint by a separate and unanimous vote. Rule VIII(D), SDCL 16–19, Appx.

2. Other than extensive background regarding Eicher's complaints against Koch and Clayborne, the record before us does not contain the specifics of the remaining complaints filed by Eicher since they were expunged and dismissed by the Disciplinary Board. As there is no basis for our review of the contents of the others, we express no opinion on their propriety.

(2) Rule 3.3 concerning candor toward the tribunal;

(3) Rule 3.4 concerning fairness to opposing parties and counsel;

(4) Rule 4.1 concerning truthfulness in statements to others;

(5) Rule 4.4 concerning respect for rights of third persons;

(6) Rule 8.3 concerning the obligation to report misconduct; and

(7) Rule 8.4(a)(c) & (d) concerning professional misconduct.

[¶ 21.] The Board recommended that Eicher be publicly censured for his violations of the Rules of Professional Conduct and that he pay the costs and expenses of this disciplinary proceeding.

### REFEREE

[¶ 22.] The Honorable Eugene Martin, a retired judge of the circuit court, was appointed by this Court to act as Referee in this matter. The Referee agreed that Eicher violated the statutes and Rules of Professional Conduct cited by the Disciplinary Board. The Referee did not believe, however, that Eicher's conduct toward Attorney M violated any rule of professional conduct. The Referee recommended that Eicher receive a private reprimand for his conduct in the Clayborne complaint and a public censure for the remaining violations of Rules of Professional Conduct. The Referee noted:

> [Eicher] is an intelligent and articulate attorney with a resume replete with accomplishments, civil, legal, and religious. All of this notwithstanding, it appears to me that [Eicher] does not know, or refuses to acknowledge, the distinction between retaliation and appropriate response; between offensive personality and fair and reasoned comment; between vigorous representation and professional conduct. It is his obligation to know and follow.

### STANDARD OF REVIEW

 [¶ 23.] The Disciplinary Board and the Referee conducted detailed hearings in this matter. Each made findings, conclusions, and recommendations regarding the appropriate discipline in Eicher's case. This Court gives careful consideration to their findings because they had the advantage of seeing and hearing Eicher, the only witness in each hearing.[3] *In re Discipline of Mattson,* 2002 SD 112, 651 N.W.2d 278. This Court, however, gives no particular deference to the Referee's recommended sanction. *In re Discipline*

---

**3.** At oral argument Eicher claimed that the Disciplinary Board denied his request to present witnesses on his behalf. We find no basis for this in the record. He was advised of the Board's rules which include the accused attorney's "right to be heard, to offer witnesses, to be represented by Counsel and to have a record kept[.]" *See* Rule IX(D), Rules of Procedure of the South Dakota Disciplinary Board of the State Bar of South Dakota, SDCL 16–19, Appx.

Eicher also claimed that the confidentiality of disciplinary proceedings precluded him from telling his client about the proceedings concerning his conduct and calling her as a witness. Eicher, however, could have waived that confidentiality. SDCL 16–19–99 provides, in part

> All proceedings involving allegations of misconduct by or the disability of an attorney shall be kept confidential until a formal complaint asking for disciplinary action is filed with the Supreme Court by the board or the attorney general, *or the respondent-attorney requests that the matter be public,* or the investigation is predicated upon a conviction of the respondent-attorney for a crime or, in matters involving alleged disability, the Supreme Court enters an order transferring the respondent-attorney to disability inactive status pursuant to § 16–19–88 or 16–19–92.

(emphasis added).

*of Dorothy*, 2000 SD 23, 605 N.W.2d 493. "The final determination for the appropriate discipline of a member of the State Bar rests firmly with the wisdom of this Court." *Matter of Discipline of Wehde*, 517 N.W.2d 132, 133 (S.D.1994).

### LEGAL ANALYSIS

 [¶ 24.] In this case, "[w]e must thoroughly examine the merits of this case, as well as the overall propriety of what our decision would mean to the South Dakota Bar and the public at large." *Dorothy*, 2000 SD 23 at ¶ 19, 605 N.W.2d at 498. "[W]e first reaffirm the purpose of the disciplinary process—to protect the public, not to punish the lawyer." *Petition of Pier*, 1997 SD 23, ¶ 8, 561 N.W.2d 297, 299. A further purpose of the disciplinary process is the deterrence of like conduct by other attorneys. *Matter of Discipline of Tidball*, 503 N.W.2d 850 (S.D.1993).

#### 1. The Koch Complaint
#### A.

[¶ 25.] When Eicher became a member of the State Bar of South Dakota he took an oath to "abstain from all offensive personality, and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged[.]" SDCL 16–16–18. "Note that this is a continual and on-going obligation. Each day of an attorney's life demands that these requirements be met anew." *In re Ogilvie*, 2001 SD 29, ¶ 56, 623 N.W.2d 55, 67 (Gilbertson, J., dissenting). This constitutes a lawyer's duty, SDCL 16–18–14, and a lawyer's responsibility to "use the law's procedures only for legitimate purposes and not to harass or intimidate others. A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials." Preamble, South Dakota Rules of Professional Responsibility. SDCL 16–18 Appx.

[¶ 26.] "[T]he legal profession has seen an increasing number of attorneys engaging in conduct that is personally and professionally offensive. State-bar disciplinary action results because of findings that an attorney has engaged in flagrant disrespect toward a court, opposing counsel, an adverse party, or the attorney's own client[.]" Janelle A. McEachern, Annotation, *Engaging in Offensive Personality as Ground for Disciplinary Action Against Attorney*, 58 A.L.R.5th 429 (1998).

[¶ 27.] The Nebraska Supreme Court has observed:

> We explained in *In re Appeal of Lane*, 249 Neb. at 511, 544 N.W.2d at 375, that the "requisite restraint in dealing with others is *obligatory conduct for attorneys* because '[t]he efficient and orderly administration of justice cannot be successfully carried on if we allow attorneys to engage in unwarranted attacks on the court [or] opposing counsel.... Such tactics seriously lower the public respect for ... the Bar.'" (emphasis supplied.) (Quoting *Application of Feingold*, 296 A.2d 492 (Me.1972)). Furthermore, "'[a]n attorney who exhibits [a] lack of civility, good manners and common courtesy ... tarnishes the ... image of ... the bar....'" *Id.* (Quoting *In re McAlevy*, 69 N.J. 349, 354 A.2d 289 (1976)).

*In re Converse*, 258 Neb. 159, 602 N.W.2d 500, 508 (1999).

[¶ 28.] This Court quoted *Converse* in *Dorothy*, 2000 SD 23 at ¶ 48, 605 N.W.2d at 507–508 and expanded its analysis:

> The Nebraska Supreme Court has recently stated:
>
>> "Care with words and respect for courts and one's adversaries is a necessity, not because lawyers and judges are without fault, but because

trial by combat long ago proved unsatisfactory.

. . .

"The profession's insistence that counsel show restraint, self-discipline and a sense of reality in dealing with courts, other counsel, witnesses and adversaries is more than insistence on good manners. It is based on the knowledge that civilized, rational behavior is essential if a judicial system is to perform its function. Absent this, any judicial proceeding is likely to degenerate into [a] verbal free-for-all. . . . [H]abitual unreasonable reaction to adverse rulings . . . is conduct of a type not to be permitted of a lawyer when acting as a lawyer."

*In re Converse,* 258 Neb. 159, 602 N.W.2d 500, 508 (1999) (citing *Appeal of Lane,* 249 Neb. 499, 544 N.W.2d 367, 376 (1996)). Distinguishing between reasoned comment protected by the First Amendment and unprotected, unprofessional statements goes back nearly to the establishment of an organized bar in this State.

[T]here can be such an abuse of the freedom of speech and liberty of the press as to show that a party is not possessed "of good moral character," as required for admission to the bar of this state . . . and therefore to require that such person be excluded from the bar of this state; and to our mind the evidence submitted here shows such an instance . . . "Nor can the respondent be justified on the ground of guaranteed liberty of speech. When a man enters upon a campaign of villification [sic], he takes his fate into his own hands, and must expect to be held to answer for the abuse of the privilege extended to him by the Constitution. . . ."

*In re Egan,* 24 S.D. 301, 326–27, 123 N.W. 478, 488 (1909). *See also In re Gorsuch,* 76 S.D. 191, 75 N.W.2d 644, 648–49 (1956); *Converse,* 602 N.W.2d at 509.

[¶ 29.] Eicher's written comments to the trial court in the *Thomas* matter concerning Koch, Koch's client, and the trial court, went far beyond fair and reasoned comment protected by the First Amendment. Instead they constitute unprotected, unprofessional statements. As we said in *Dorothy,* 2000 SD 23 at ¶ 47, 605 N.W.2d at 507:

This clearly was not an isolated incident where emotions of the moment in the heat of litigation overcame better judgment. *In re Snyder,* 472 U.S. 634, 647, 105 S.Ct. 2874, 2882, 86 L.Ed.2d 504, 514 (1985). The worst of it was prepared or written out in advance with sufficient time to reflect on the inflammatory contents of the statements before they were delivered.

"Moreover, these acts were not an isolated 'foolish and negligent' incident, *id.,* they were intentional and numerous in number." *Mattson,* 2002 SD 112 at ¶ 55, 651 N.W.2d at 289.

## B.

[¶ 30.] When Eicher received notice of the disciplinary complaint that Koch filed against him, he promptly faxed Koch a letter. In it, Eicher proposed that he would not appeal the *Thomas* decision if Koch would agree to withdraw the disciplinary complaint.

[¶ 31.] By doing so, Eicher attempted to utilize Koch's client's interest in avoiding an appeal to compromise Koch's obligations to report professional misconduct. Rule 8.3(a) provides:

A lawyer having knowledge that another lawyer has committed a violation of the Rules of Professional Conduct that rais-

es a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects *shall* inform the appropriate professional authority. (emphasis supplied).

"Rule 8.3(a) is a mandatory rule of discipline." 2 Geoffrey C. Hazard Jr. and W. William Hodes, *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct* § 8.3:201 (2d ed. 1996). The duty to report disciplinary violations also embraces a responsibility not to frustrate the reporting by others or dissuading others from cooperating in disciplinary investigations.[4] *See Sup.Ct. Bd. of Prof. Ethics v. Furlong*, 625 N.W.2d 711 (Iowa 2001). Attempting to bargain away a disciplinary complaint also constitutes "conduct that is prejudicial to the administration of justice[.]" Rule 8.4(d); *The Florida Bar v. Frederick*, 756 So.2d 79 (Fla.2000). *See also* SDCL 16–18–26(2) which states, "[e]very attorney at law who: ... intentionally delays his client's suit with a view to his own gain; ... is guilty of a Class 2 misdemeanor."

▆▆▆▆ [¶ 32.] Additionally, Eicher's deliberate conduct created a conflict with his own client which he did not report to the client. "The attorney is in effect a special agent limited in duty to the vigilant prosecution and defense of the rights of the client and not to bargain or contract them away." *Northwest Realty Co. v. Perez*, 80 S.D. 62, 65, 119 N.W.2d 114, 116 (1963). "The foundation of an attorney's relationship with clients and the legal system is trust." *Tidball*, 503 N.W.2d at 856 (citations omitted).[5] Eicher violated this duty.

### 2. The Clayborne Complaint

[¶ 33.] During a criminal trial Eicher moved to dismiss the proceeding because the State failed to produce the original videotapes purporting to show his client taking money. Eicher claimed that the tapes provided exculpatory evidence and his ability to cross examine witnesses was impaired by the loss of the tapes. Eicher did not tell the court that he had a copy of the videotapes until Clayborne confronted him with this fact.

▆▆▆▆ [¶ 34.] While Eicher did not directly lie to the trial court, he intentionally misled the court concerning the availability of what he claimed was essential evidence. "Clearly, the requirement of candor towards the tribunal goes beyond simply telling a portion of the truth." *In re Discipline of Wilka*, 2001 SD 148, ¶ 15, 638 N.W.2d 245, 249.

It requires every attorney to be fully honest and forthright.

> We cannot overemphasize the importance of attorneys in this state being

---

4. *See generally* SDCL 16–19–46 which provides that in disciplinary proceedings "[n]either unwillingness nor neglect of the complainant to sign a complaint or to prosecute a charge, nor settlement or compromise between the complainant and the attorney or restitution by the attorney, shall, in itself, justify abatement of the processing of any complaint."

5. In *Mattson*, we examined the nature of this attorney-client relationship:
 "The nature of the relationship between attorney and client is highly fiduciary. It consists of a very delicate, exacting and confidential character. It requires the highest degree of fidelity and good faith. It is a purely personal relationship, involving the highest personal trust and confidence." "By virtue of his fiduciary duties to his client, an attorney is forbidden from using his official position for private gain." While representing a client an attorney must not do anything knowingly that is inconsistent with the terms of his employment or contrary to the best interests of his client. This is "fundamental law."
 2002 SD 112 at ¶ 44, 651 N.W.2d at 286–287. (citations omitted).

absolutely fair with the court. Every court ... has the right to rely upon an attorney to assist it in ascertaining the truth of the case before it. Therefore, candor and fairness should characterize the conduct of an attorney at the beginning, during, and at the close of litigation.

[*Matter of Discipline of*] *Schmidt*, 491 N.W.2d [754] at 755 (citing *H. Drinker*, Legal Ethics 74 (1953)). There is no allowance for interpretation.

*Id.*

 [¶ 35.] Eicher's professional obligation to represent his client does not exonerate him in this situation. "[T]here is a line that even the zealous advocate cannot cross." *Wilka*, 2001 SD 148 at ¶ 16, 638 N.W.2d at 249.

It is absolutely necessary that each member of the bar comprehends the great responsibility that every person who has the privilege to practice law must strive for: to be a person of unquestionable integrity as he or she deals with the rights of people before the bar. A practitioner of the legal profession does not have the liberty to flirt with the idea that the end justifies the means, or any other rationalization that would excuse less than complete honesty in the practice of the profession. Certainly, our Rules of Professional Conduct allow no such flirtation.

*Matter of Discipline of Mines*, 523 N.W.2d 424, 427 (S.D.1994). *See also* SDCL 16–18–19:

It is the duty of an attorney and counselor at law to employ, for the purpose of maintaining the causes confided to him, such means only as are consistent with truth and never to seek to mislead the judges by any artifice or false statement of fact or law.

Eicher intentionally misled the court and "crosse[d] the line into improper and unprofessional conduct." *Wilka*, 2001 SD 148 at ¶ 16, 638 N.W.2d at 249.[6]

### 3. Board Generated Complaint

[¶ 36.] While investigating Eicher's meritorious complaint against Attorney M, the Board discovered a series of letters Eicher wrote. Throughout the correspondence, Eicher maintains that he will seek Rule 11 sanctions, allege barratry, and file disciplinary actions if Attorney M does not take the action Eicher seeks.

[¶ 37.] The Disciplinary Board and the Referee disagreed about Eicher's course of conduct in this matter. The Disciplinary Board found that Eicher's acts served no legitimate purpose, particularly when repeated several times in unrelated actions. The Board believed the letters demonstrated a pattern aimed to intimidate and threaten Attorney M so as to interfere with his professional obligation to his clients. The Referee found:

If, after investigation, an attorney justifiably believes, as does his employer (including a[sic] insurance agency), that a particular personal injury case is in some respects fraudulent, frivolous, or of highly questionable legal merit, then I believe he (they) should have right to so

6. This was not the end of this type of conduct. A great portion of Eicher's objections to referee's report filed with this Court is nothing more than an attack on the integrity of board member Greg Eiesland. In that pleading Eicher castigates Eiesland for not recusing himself at the April board meeting where a complaint was filed against Eicher. What

Eicher fails to tell this Court is that Eiesland did not sit on the board when the complaint was actually heard before the board in June of that year. "Selective omission of relevant information ... 'exceeds the bounds of zealous advocacy and is wholly inappropriate.'" *Dorothy*, 2000 SD 23 at ¶ 51, 605 N.W.2d at 509.

state, along with perceived legal ramifications. Attorney "M's" conduct was unacceptable and contributed to the suspicion and disbelief regarding the merit of these claims. There was a basic professional disrespect shown by Attorney "M" towards [Eicher]. Further, it appears that the attorneys involved have had a history of "frankness" with each other.

Based on my review of the letters, including Exhibit 2 [Eicher's] reply letter, as well as the testimony in this matter, [Eicher] and his respective employers had a reasonable basis to advise Attorney "M" of the consequences of proceeding with a perceived frivolous, and perhaps fraudulent, claim. I am *not* satisfied that the specific contents of the letters were intended to threaten, intimidate, or coerce Attorney "M" into agreeing with [Eicher] about how the cases ought to proceed.

The Referee concluded that Eicher's conduct did not violate any Rules of Professional Conduct.

[¶ 38.] We note that the current Federal version of Rule 11 requires a letter from counsel to opposing counsel before a motion for Rule 11 sanctions may be brought before the court.[7] However, that is a far cry from the numerous letters written by Eicher to Attorney M which went well beyond a notice of a possible Rule 11 hearing and included threats of barratry and filing of disciplinary actions.

[¶ 39.] Threats by counsel to file disciplinary charges against an opponent may, depending on the circumstances violate one or more of Rules 8.4(b), 3.1, 4.1, 4.4 and 8.4(b). ABA Com. on Ethics and Professional Responsibility, Use of Threatened Disciplinary Complaint Again Opposing Counsel, Formal Op. 94–383. This opinion explains, in part,

> A lawyer's use of the threat of filing a disciplinary complaint or report against opposing counsel, to obtain an advantage in a civil case, is constrained by the Model Rules, despite the absence of an express prohibition on the subject. Such a threat may not be used as a bargaining point when the subject misconduct raises a substantial question as to opposing counsel's honesty, trustworthiness, or fitness as a lawyer, because in these circumstances, the lawyer is ethically required to report such misconduct. Such a threat would also be improper if the professional misconduct is unrelated to the civil claim, if the disciplinary charges are not well founded in fact and in law, or if the threat has no substantial purpose or effect other than embarrassing, delaying or burdening the opposing counsel or his client, or prejudicing the administration of justice.

[¶ 40.] Eicher repeatedly told Attorney M that he would file disciplinary actions in the Bird Hat and Bernardo cases. He also repeatedly maintained that he would seek Rule 11 sanctions and allege barratry.

 [¶ 41.] SDCL 15–6–11(a):

The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion and exhib-

---

**7.** Federal Rule 11(c)(1)(A) adopted in 1993 contains a twenty-one day "safe harbor." If a lawyer intends to file a Rule 11 motion against an opposing lawyer, the first must give the other twenty-one days notice of the Rule 11 motion, thus allowing the "offending" lawyer the option of withdrawing the purported frivolous pleading during the twenty-one day period. If the pleading is not withdrawn, then the Rule 11 motion may proceed to be heard by the Court.

South Dakota's version of Rule 11 (SDCL 15–6–11) is the 1983 version of the Federal Rule. It does not contain the twenty-one day notice provision.

its or attachments thereto, or other paper; that to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass, embarrass another party or person, or to cause unnecessary delay or needless increase in the cost of litigation.

Appropriate sanctions are provided for a violation of this rule. SDCL 15–6–11(b). However, Rule 11 motions must never be used as a mere tactic to bolster a response—whether meritorious or not—to a motion or pleading. *Caribbean Wholesales and Service Corp. v. U.S. JVC Corporation*, 101 FSupp2d 236 (S.D.N.Y.2000). The same is true of threatened Rule 11 sanctions and barratry claims, especially in the Bird Hat matter which was merely at a claim stage. *See* SDCL 16–18–16: "[i]t is the duty of an attorney and counselor at law not to encourage either the commencement or continuance of an action or proceeding from any motive of passion or interest."

[¶ 42.] Eicher's conduct, at a minimum, violated Rule 3.4, dealing with fairness to opposing counsel, Rule 8.3, dealing with the reporting of professional misconduct, and Rule 8.4, dealing with professional misconduct and engaging in conduct prejudicial to the administration of justice.[8] Therefore we uphold the Board's conclusions of law on this complaint.

#### 4. Eicher Generated Complaint

[¶ 43.] While the three complaints against Eicher were pending, Eicher, with-

---

**8.** SDCL 16–18–19 states:

It is the duty of an attorney and counselor at law to employ, for the purpose of maintaining the causes confided to him, such means only as are consistent with truth, and never to seek to mislead the judges by

in a five day period, filed four disciplinary complaints. Two were filed against Koch and Clayborne, the attorneys who had filed complaints against Eicher. Two were filed against Clayborne's law partners All were investigated, found meritless, and expunged.[9]

[¶ 44.] Rule 8.3(a), which mandates the reporting of a fellow lawyer's misconduct,

[L]imits the rule to cases of known violations that directly implicate the integrity of the legal profession. The duty to report accordingly applies only to cases raising a "substantial question" about another lawyer's very fitness to practice law. This formula puts a burden on the reporting lawyer to make a preliminary judgment whether a violation rises to that level.

2 Geoffrey C. Hazard Jr., et al, *The Law of Lawyering* at § 8.3:102. Eicher's complaints against Clayborne and Koch did not rise to that level. The Disciplinary Board and the Referee correctly found that these were retaliatory in nature.

[¶ 45.] SDCL 16–19–30 provides:

Complaints submitted to the board or testimony with respect thereto shall be absolutely privileged and no civil action predicated thereon may be instituted. Members of the board, the board's counsel, board staff and any personnel or legal counsel appointed pursuant to § 16–19–29(2) shall be immune from suit for any conduct in the course of their official duties.

---

any artifice or false statement of face or law.

**9.** We express no opinion on the propriety of these complaints. *See* fn. 2.

Eicher claims that the immunity provided by this statute means no attorney may be the subject of a disciplinary action because the attorney filed a complaint ultimately rejected by the Board. Eicher misreads this court rule. SDCL 16–19–30 precludes a civil action predicated on complaints submitted to the Board. Article V § 12 of the South Dakota Constitution vests the ultimate authority for regulation of attorneys with this Court. It is hardly consistent with this mandate that this Court would enact a court rule that would preclude it from imposing discipline upon attorneys who violate the ethical rules by filing unwarranted complaints with the Disciplinary Board under the premise that such improper conduct is privileged. SDCL 16–19–30 does not preclude accountability for a violation of the Rules of Professional Conduct.

[¶ 46.] The Referee and the Disciplinary Board concluded that Eicher's filing of retaliatory and meritless complaints violated Rules 3.1, 3.3, 3.4, 4.1, 4.4 and 8.4. Our review of the complaints against Clayborne and Koch establishes no error.

### APPROPRIATE DISCIPLINE

[¶ 47.] The appropriate discipline in a particular case is determined by considering the seriousness of the misconduct and the likelihood that it or similar misconduct will be repeated. *In re Discipline of Light*, 2000 SD 100, 615 N.W.2d 164. We also consider the prior record of the attorney. *Matter of Bihlmeyer*, 515 N.W.2d 236 (S.D.1994). Eicher's conduct in this case leads us to conclude that the Disciplinary Board's recommendation of public censure and the Referee's recommendation of public censure and private reprimand are too lenient.

[¶ 48.] Eicher is a familiar participant in the disciplinary process. His acts of disparaging others, threatening sanctions and disciplinary complaints against opposing counsel, attempting to bargain away a disciplinary complaint against himself by offering to give up his client's civil appeal rights, and filing retaliatory disciplinary complaints are prejudicial to the administration of justice and violative of the Rules of Professional Conduct. Nearly a century ago, this Court had cause to condemn as unprofessional conduct, those attorneys who abused the judicial process for improper means.

> Attorneys should never forget that they are officers of the court; that justice under the law is all that their clients are entitled to and all that they have a right to seek for them; that theirs is an honorable profession who true votaries never try to justify their acts on the old saw, "The end justifies the means."

*In re Swihart*, 42 S.D. 628, 635, 177 N.W. 364, 366 (1920) (six months suspension ordered).

[¶ 49.] Eicher attempts to avoid responsibility for his acts by pointing to the judges who presided over the legal proceedings that produced these complaints. He argues that since none of the complaints were generated by the judge presiding at those proceedings but rather by disgruntled opposing attorneys, he is absolved of any finding of wrong doing. However, Canon 3(D)(2) of the South Dakota Code of Judicial Conduct provides, in part:

> A judge who receives information indicating a substantial likelihood that a lawyer has committed a violation of the Code of Professional Responsibility should take appropriate action. A judge having knowledge that a lawyer has committed a violation of the Code of Professional Responsibility that raises a substantial question as to the lawyer's honesty, trustworthiness or fitness as a

lawyer in other respects shall inform the appropriate authority.

SDCL 16–2, Appx. This Canon clearly provides that a trial judge may take "appropriate action" in its court without reporting it to the Disciplinary Board. It is only when a violation raises a "substantial question" as to the "lawyer's honesty, trustworthiness or fitness as a lawyer" that a mandatory obligation to report to the Disciplinary Board is invoked. Thus, these trial judges may have considered the issue and taken what they deemed to be "appropriate action." Simple communication with the lawyer satisfies the judge's ethical duty. Our record does not inform us on that issue. Moreover, each of those judges only had one incident before them. We have the benefit of an extensive record with multiple complaints all showing similar inappropriate conduct.

[¶ 50.] In addition, judges do have authority to deal with misconduct committed before them by contempt, Rule 11 sanctions and other inherent authority. Article V § 12 of the South Dakota Constitution vests this Court with disciplinary authority of members of the bar concerning their right to practice law in this state. While Rule 11 sanctions may also flow from the attorney's ethical violations, it is a separate legal consequence of the misconduct. A trial court has no more authority to disbar, suspend or publicly censure an attorney for an infraction committed before it in a legal proceeding than it does to absolve that attorney of a charge of an ethical violation in the same proceeding.

[¶ 51.] Eicher further defends his actions by arguing that his conduct is no worse than that of some other attorneys in his area of practice. "Arguments that [Eicher] is no worse than the supposed bottom of the barrel that have been admitted [to the bar], all fail to pass muster." *Ogilvie*, 2001 SD 29 at ¶ 70, 623 N.W.2d at 70 (Gilbertson, J. dissenting).

[¶ 52.] Eicher refuses to acknowledge the impropriety of his actions. This, coupled with his penchant for blaming others and the repeated unprofessional attacks that have continued throughout this appeal underscore the need for discipline. Here, Eicher attempts to absolve himself by blaming the conduct of opposing counsel and parties for his situation.[10] He has also cast unwarranted aspersion on the impartiality of the Disciplinary Board and unjustly attacked the Court's Referee for failing to follow what he perceives to be the correct disciplinary procedures. He is totally unrepentant.

> To gain [and maintain] admission to the bar, [a person] does not have to fit into any preconceived stereotype. Membership in the Bar should be [as] diverse as is the public it is charged with serving. However, for the legal system to properly function, certain common denominators are mandatory. One of these is that members and applicants for membership, exhibit good moral character. In South Dakota a three piece suit and

---

**10.** Eicher's own pleadings filed with this Court unmistakably reveal his inability to understand his ethical breaches. His pleadings also reveal the substantial likelihood his wrongful activity will continue in the future. For example, with respect to an appropriate sanction, Eicher suggests that to "draw to a close the litany of impermissible errors prejudice and personal animus of certain Board members [Eicher] is reminded that if the findings and recommendations of the Referee and the Board are followed, a warranted public rejoinder by [Eicher] would certainly be permissible." Eicher then asks rhetorically "[i]n what other way could the public be informed that the complaints are irrelevant to the conduct owed by attorneys to their clients. How else would the public—which is to be protected from the wrongful conduct some lawyers [sic]—be protected, as well as fully informed."

leather briefcase is not a prerequisite to be a lawyer——good moral character is. *Mattson*, 2002 SD 112 at ¶ 53, 651 N.W.2d at 289 (citations omitted).

[¶ 53.] Eicher further attempts to justify his conduct by wrapping himself in the protection of the First Amendment. This record is replete with his misdeeds, not free speech. Under such circumstances, rather than attempting to assure this Court his misdeeds will not be repeated, his objections to the Referee's report as well as his presentation to this Court at oral argument and his post oral argument submission lead us to conclude his unwarranted view of the cause of his present situation will result in his continuing to practice law in the same inappropriate manner. *See Dorothy*, 2000 SD 23 at ¶ 41-2, 605 N.W.2d at 505. The manner of the practice of law Eicher has engaged in and continues to pursue has never been allowed in this State and will not be allowed in the future.

[¶ 54.] The disciplinary options at this Court's disposal include private remand, public censure, placement on probationary status, suspension for up to three years and disbarment. *Mattson*, 2002 SD 112 at ¶ 51, 651 N.W.2d at 288; SDCL 16-19-35. SDCL 16-19-31 states in part: "[t]he license to practice law in this state is a continuing proclamation by the Supreme Court that the holder is fit to be entrusted with professional and judicial matters, and to aid in the administration of justice as an attorney and as an officer of the court." Upon such a record as this, we cannot conclude Eicher is meeting or will meet this standard. Eicher's egregious conduct involved in this case combined with his disciplinary history, lack of respect for the legal system, and complete lack of remorse is of such serious professional nature that it warrants a one hundred (100) day suspension from the practice of law. SDCL

16-19-35(2). We feel that this adequately protects the public while allowing Eicher sufficient time to educate himself on the proper conduct of an attorney and moreover, justify to this Court that the public would be benefited by his re-admission to being a full-time practitioner. *See* SDCL 16-19-83.

> History is replete with those who have overcome a weakness or character flaw and risen to what Attorney at Law Abraham Lincoln declared to be the "better angels of our nature." Perfection is not required-good moral character is.

*Ogilvie*, 2001 SD 29 at ¶ 72, 623 N.W.2d at 71 (Gilbertson, J., dissenting). *See also Application of Widdison*, 539 N.W.2d 671, 679 (S.D.1995).

[¶ 55.] In addition, Eicher is required to submit an affidavit to this Court stating under oath that:

1) he has reviewed the Rules of Professional Conduct;

2) upon reinstatement, he will maintain professional malpractice insurance along with proof thereof;

3) he recognizes fully that his conduct violated the Rules of Professional Conduct by which he is bound;

4) he pledges he will devote every effort in his future practice to fully abide by the South Dakota Rules of Professional Conduct;

5) he will be taxed and required to pay, allowable costs and expenses as provided in SDCL 16-19-70.2; and

6) he is to fully comply with the requirements of a suspended attorney found in SDCL 16-19-78 and 79.

*See Wilka*, 2001 SD 148 at ¶ 19, 638 N.W.2d at 250. He must also take and successfully pass the Multistate Professional Responsibility Examination either prior to reinstatement or within six

months thereafter. *Matter of Discipline of Johnson*, 488 N.W.2d 682 (S.D.1992).

[¶ 56.] SABERS, ZINTER and MEIERHENRY, Justices, and MILLER, Retired Justice, concur.

[¶ 57.] KONENKAMP, Justice, disqualified.